In the Matter of James D. CURTIS, Jr., and Gail L. Curtis, Debtors.

Bankruptcy No. 79–01297–WE.

United States Bankruptcy Court, W. D. Missouri, W. D.

Dec. 7, 1979.

John R. Stonitsch, Kansas City, Mo., for debtors.

Rita A. Rhodes, Kansas City, Mo., for wage earner trustee.

ORDER CONFIRMING PLAN OF ARRANGEMENT UNDER CHAPTER 13 OF THE BANKRUPTCY CODE PURSUANT TO SECTION 1325, TITLE 11, UNITED STATES CODE

DENNIS J. STEWART, Bankruptcy Judge.

The debtors filed their petition herein and a plan of arrangement under chapter 13 on October 10, 1979. The plan of ar-

rangement proposed payments to two classes of unsecured creditors: (1) 100% payments of past due child support to the former wife of the debtor and (2) 10% payments of other unsecured creditors whose total debts are about $1,990. This is proposed to be accomplished by payments of $75 per month over a period of some 18 months.

On November 26, 1979, the wage earner trustee filed her written objection to the confirmation of the plan of· arrangement thus proposed, generally complaining that "[t]he plan has not been proposed in good faith" and further contending that payments to the second class of unsecured creditors is of a ratio too small in comparison to the total indebtedness due them. This defect, it is suggested, might be remedied by "leaving the plan payment in the same amount and thereby extending the plan within the 36 month time limit."

There is no contention, nor does it appear from the files and records of the court, that the proposed plan of arrangement does not meet the other requisites for confirmation under § 1325 of the Bankruptcy Code. The division of the unsecured creditors into classes is expressly permitted by the terms of § 1322(b)(1) of the Code so long as the terms and provisions of the plan of arrangement do not "discriminate unfairly against any class so designated." And, although there is a great difference in the percentage of the claims to be paid between those of the first class and those of the second, the former claims all amount to child support payments which would not be dischargeable in bankruptcy. See § 523(a)(3)(A), (a)(5) of the Bankruptcy Code. From this, it appears that there is a rational basis for the discrimination between the two classes and that it must therefore be regarded as "fair" within the meaning of the above section. For the obvious import of the nondischargeability section is that child support payments are generally to be regarded as having a status higher than the ordinary indebtedness under the law of bankruptcy.

The only issue for the court to determine as one of fact and law, therefore, is whether "the plan has been proposed in good faith and not by any means forbidden by law" as provided in § 1325(a)(3) of the Bankruptcy Code. On this issue, it must necessarily be of paramount importance whether the payments, periodic and total, represent the best effort which the debtor can apply against the scheduled indebtedness. The question promises to be particularly acute in cases such as that at bar, in which the debtor does not propose to make payments from recurring and regular wages for the three-year period during which payments are ordinarily allowed to be made under § 1322(c) of the Bankruptcy Code, but rather proposes to make payments for a significantly shorter time—one half that time in the case at bar.

The debtor offered his testimony in the course of the confirmation hearing conducted on December 4, 1979, to the effect that his take-home pay is $743 per month; that this is supplemented by $40 per month which his wife earns from babysitting; that, given their average monthly expenditures for the barest and starkest of necessities,[1] the amount remaining narrowly permits the payment of $75 per month to the wage earner trustee under the plan of ar-

---

1. According to the testimony of James D. Curtis taken in the course of the confirmation hearing of December 4, 1979, his recurring monthly expenditures are as follows:

| | |
|---|---|
| rent | $175.00 |
| lights | 40.00 |
| water | 10.00 |
| gas | 50.00 |
| telephone | 25.00 |
| child support | 160.00 |
| food | 175.00 |
| clothing | 5.00 |
| cleaning | 20.00 |
| gas and oil | 50.00 |
| taxes | 5.00 |
| haircuts | 5.00 |

The total of these monthly expenditures is $720, as compared to the $783 per month in take-home pay which he and his wife make. Thus, only by further reducing these payments by some $12 a month can the debtor expect to make regular monthly payments of $75 into the plan.

rangement[2]; that, furthermore, the debtor's wife is expecting another child shortly[3]; that the debtor will have to pay at least 20% and possibly 100% of the costs of childbirth[4]; that the expenses of living will accordingly be greatly increased and, simultaneously, the debtor's wife may have to stop the babysitting chores by means of which she earns on the average some $40 per month; that, beyond 5 cents or 10 cents per hour, the debtor has no prospect of any wage increase in the future; and that, due to his employer's lack of sympathy, extension of the wage earner plan beyond the 18-month period which it currently envisages might well result in the termination of his employment.

Under these facts and circumstances (shown, as noted above, by the uncontradicted testimony of the debtor), it appears that a finding of good faith is warranted. As a guideline, the court agrees with the rule of thumb that, in the absence of exceptional circumstances, a debtor demonstrates his good faith by proposing to pay at least 10% of his take-home pay over the three-year period ordinarily allowed as the maximum duration for chapter 13 plans.[5] In this case, the debtor proposes to pay (1) less than 10% of his monthly take-home pay (2) for a period of time greatly less than three years. But exceptional circumstances exist to justify both departures from the putative guideline. For, as noted above, the debtor's current liabilities for child support and the expenses of living do not admit of his making a greater payment than $75 monthly. Further, the evidence which has been adduced clearly shows that it can only reasonably be expected that his expenses will increase, perhaps dramatically, and his income will not appreciably increase and may significantly decrease. Under these circumstances, it is reasonable, and consonant with good faith, that the proposed plan extends for only 18 months rather than 36 months.

As a final consideration, it must be noted that the proposed plan is in the best interest of creditors within the meaning of § 1325(a)(4) of the Bankruptcy Code insofar as it clearly offers them as much or more than they would receive under straight liquidation.[6] It is doubtful whether the bankruptcy court can redefine the minimum amounts required to be paid, already defined by the clear letter of that subsection, by importing an immutable higher minimum into the "good faith" provisions of § 1325(a)(3) of the Code. Therefore, the 10%-for-three-years guideline must remain subject to the "exceptional circumstances" rule. And exceptional circumstances exist in this case to warrant confirmation of the plan.

It is therefore, for the foregoing reasons,

ORDERED that the debtor's plan of arrangement herein be, and it is hereby, confirmed pursuant to § 1325 of the Bankruptcy Code.

---

2. The debtor recently purchased Blue Cross-Blue Shield insurance. It is uncertain whether it will cover 80% of the costs of delivery. Cf. note 1, *supra*.

3. This is in addition to the former wife and 10-year-old son whom he presently supports. See note 1, *supra*.

4. See note 2, *supra*.

5. Cf. note 6, *infra*.

6. It appears that this statutory definition of the minimum which can be paid under a plan of arrangement must be regarded as binding. The "rule of thumb" mentioned in the text of this memorandum, it appears therefore, should only provide a guide into determining whether a hearing should be held on the "good faith" question.