In the Matter of Raymond L. FRANCE and Syrenia France, Debtors.

Bankruptcy No. 81–02275–SW–13.

United States Bankruptcy Court,
W. D. Missouri,
Southwestern Division.

Oct. 19, 1981.

As Amended Feb. 10, 1982.

William H. Perry, III, Joplin, Mo., for debtors.

ORDER CONDITIONALLY CONFIRMING PLAN OF ARRANGEMENT PROVIDED THE SECURED CREDITOR AMERICAN NATIONAL BANK IS FULLY PAID AT THE CONTRACT RATE WITHOUT DIMINUTION OF THE OTHER PROPOSED PAYMENTS TO CREDITORS

DENNIS J. STEWART, Bankruptcy Judge.

The debtors have proposed a plan of arrangement under chapter 13 of the Bankruptcy Code in which they project paying the sum of $150 per month to creditors over a 42-month period to be distributed to creditors on a "pro rata basis." The money thus placed at the disposal of the chapter 13 trustee would go to pay some $4,484.98 in secured debts and $6,376.00 in unsecured debts. Thus, over the four-year period, approximately ⅕ of the value of the unsecured indebtedness will be paid [1] by means of monthly payments which slightly exceed 10% of the debtors' monthly take-home income.[2] Therefore, the principal guidelines for confirmation set down in *In re Terry*, 630 F.2d 634 (8th Cir. 1980), and *Matter of Curtis*, 2 B.R. 43 (W.D.Mo.Bkrtcy.1979), respectively requiring that "meaningful" payments be made and that the debtors pay at least 10% of their monthly take-home pay into the plan, have been met by the basic provisions of the plan of arrangement.

The only possible objection to confirmation of the plan of arrangement arises out of the rejection of the plan by the secured creditor American National Bank. It is alleged by the debtors that the value of the 1977 Thunderbird which constitutes the American National Bank's security is $3,000. In respect of this contention, the chapter 13 trustee, in her objection to unqualified confirmation of the plan of arrangement, states that:

"[t]he debt was incurred one month prior to the filing of the Chapter 13 Plan. It would, therefore, seem that one month later the collateral would not have decreased in value as indicated by the debtor's evaluation of $3,000."

In the hearing which the court conducted on September 25, 1981, on the issue of confirmation, only the debtors appeared, personally and by counsel, William B. Perry, Esquire. There were no other appearances.

---

1. By paying $150 per month for a total of 42 months, the debtors will pay a grand total of $6,300 into the plan. This would leave about $1,915.02 to defray the unsecured indebtedness. It the chapter 13 costs consume about 10% of the total amount, about $1,200 will remain to pay the $6,376.00 of unsecured debts.

2. According to their monthly breakdown, the debtors earn combined take-home pay of $1,037.90.

It was the uncontradicted factual contention of the debtors that the 1977 Thunderbird was originally purchased by them in March 1978 for a purchase price of $4,700.00. The secured claimant, on the other hand, stated in its claim that the value of the vehicle is $3,525.00.

But the secured claimant, although granted proper notice of the hearing of September 25, 1981, did not appear to support and offer evidence of its claim of value. Further, for the reasons stated below, the question of value is wholly immaterial. This is so even though, as the chapter 13 trustee suggests, the provisions of § 1325(a)(5)(B)(ii) require that the secured claimant receive "the value, as of the effective date of the plan, of property to be distributed under the plan." For the whole contract amount owed to the rejecting secured creditor is less than either of the values proposed by the debtor and the secured creditor, respectively. According to the claim filed by the American National Bank, the entire total of principal and interest now due is $2,612.07. As this court has noted on many prior occasions, this situation requires only that the debtor make payments of the full amount due at the contract rate. See, e.g., *Matter of Gerard*, Adversary Action No. 81–1366–SW–13 (W.D.Mo.Bkrtcy. September 23, 1981), to the following effect:

> "When a secured claimant is undersecured due to the existence of an arrearage, this means that the debtors must not only make current payments at the contract rate, but also promptly cure any arrearages to the extent that the claimant is secured. See *First National Bank of Gladstone v. Sebastion's, Inc.*, Adversary Action No. 81–0807–3–11 (W.D.Mo. Bkrtcy., July 16, 1981). But, in a case such as that at bar, when the secured claimant is oversecured, and there are no significant arrearages, payment at the contract rate (plus interest at that rate on the declining balance) is sufficient to grant the secured claimant the 'indubitable equivalent' or 'present value' of the security as of the date of confirmation of the plan. For the result of this is the same as if the debtors were required to pay the principal balance due on the date of bankruptcy plus interest on the declining balance until the full balance is paid. It is difficult to imagine a method of more exactly granting the 'indubitable equivalent' of a secured claim."

It is therefore, for the foregoing reasons,

ORDERED that the plan of arrangement be, and it is hereby, conditionally confirmed provided that the claim of the American National Bank be paid to the full extent of $2,612.07 at the contract rate without diminution of the amounts now currently proposed to be paid to the other creditors. This means that the debtors must pay the difference between the $164.48 contract rate and the plan rate outside the plan.