**In re David Lee DAVIDSON, Debtor.**

**In re Marty Eugene TESH and Diane Rachael Tesh, Debtors.**

**In re David Ross SHARON and Clydia Rose Sharon, Debtors.**

**Bankruptcy Nos. 86 B 7905 E, 86 B 8921 E and 86 B 9822 E.**

United States Bankruptcy Court, D. Colorado.

April 13, 1987.

Edward I. Cohen, Denver, Colo., for David Lee Davidson and David Ross Sharon and Clydia Rose Sharon.

Thomas O. Murphy. III, Longmont, Colo., for Marty Eugene Tesh and Diane Rachall Tesh.

MEMORANDUM OPINION
AND ORDER

CHARLES E. MATHESON, Bankruptcy Judge.

These cases have been consolidated for the purposes of this opinion only. These matters are all before the Court on the motions of the Debtors to confirm their chapter 13 plans. In each case no creditor nor the Standing Chapter 13 Trustee

("Trustee") has objected to confirmation. Each debtor proposes to deal with child support arrearages and the Court, *sua sponte*, set hearings on confirmation to determine the propriety of dealing with past due child support through a Chapter 13 plan.

Each of the three cases involves slightly different responses to the issue of past due child support and the manner of dealing with the repayment of that obligation through the medium of a Chapter 13 plan. The individual cases are as follows:

1. Marty Eugene Tesh and Diane Rachael Tesh—These Debtors propose to pay $170.00 per month to the Trustee for 36 months. The Debtors' priority claims for trustee compensation and attorneys fees are $1,712.00. The unsecured debt of $9,624.00 includes $2,944.00 owed to the Larimer County, Colorado Department of Social Services for past due child support. The Debtors' proposed plan classifies the unsecured debt into two classes, one being for the past due child support and the other for all other unsecured creditors. Pursuant to the terms of the plan, the past due child support is to be paid in full after which $170.00 will be distributed pro rata among the remaining unsecured creditors. These Debtors' situation is somewhat unique in that they were previously divorced and the past due child support obligations were incurred while they were separated. They have since remarried and have now filed this Chapter 13 case.

2. David Lee Davidson—Mr. Davidson has no priority debts, no secured debts and unsecured debts totalling $23,259.36 of which $14,075.00 is listed as back child support. The Debtor's amended plan purports to exclude the child support arrearages from treatment under the plan. Instead, the Debtor has included, as part of his monthly budget, an expense allocation of $250.00 for child support. Of the $250.00 amount, $150.00 represents current child support payments and $100.00 is to be allocated to the past due child support. The other unsecured creditors under the plan will share in the net $40.00 per month to be paid in plan payments for a period of 36 months.

3. David Ross Sharon and Clydia Rose Sharon—These Debtors propose to pay $50.00 per month for 36 months to the Trustee. Their schedules reflect unsecured debt of $15,167.00 of which $2,500.00 is past due child support owed to Riverside County California Social Services. No provision is made under the plan for the back child support, but the amended plan does specify that the back child support will be "paid outside the Chapter 13 plan." The Debtors' budget allocates $75.00 per month to be applied to child support payments, but no indication was given as to how the $75.00 figure is to be divided between the current and past due child support.

In each of these cases the debtors have submitted proposed orders to confirm their respective plans. In each case the proposed order directs that the monthly plan payment amounts are to be paid to the Trustee, but none of the orders indicates that the debtor is to pay any creditor on a direct basis. Pursuant to the provisions of all of the plans, upon confirmation all of the property of the estate will vest in the debtors.

The question of the propriety of the confirmation of the plans in these cases arises because of the fact that the Bankruptcy Code evidences a strong social policy to require parents (or divorced spouses owing alimony) to honor their obligations to their former families to provide ongoing support. Thus, in general, a discharge in bankruptcy is not effective to discharge obligations owed for child support, alimony or maintenance, whether owed to a former spouse or child or to a governmental agency by way of assignment. 11 U.S.C. § 523(a)(5). This exception to discharge applies even in Chapter 13 cases, notwithstanding the broader dischargeability generally available in Chapter 13. 11 U.S.C. § 1328.

The exception to discharge provided by Section 523(a)(5) recognizes that matters pertaining to family relationships are to generally be left to the state law. Bankruptcy courts are not to become domestic relations courts. *Caswell v. Lang*, 757

F.2d 608 (4th Cir.1985); *In re McCray*, 62 B.R. 11 (Bankr.D.Colo.1986). It is for the state to determine, in the exercise of the state's public policy, the necessity for and the amount and time for the payment of child support and alimony. Thus, the Bankruptcy Court cannot redetermine the amount of support payments to be paid, nor can the Bankruptcy Code "be used to deprive dependents, even if only temporarily, of the necessities of life." *Caswell v. Lang, supra*, p. 610; *Matter of Bernstein*, 20 B.R. 595 (Bankr.M.D.Fla.1982).

A Chapter 13 plan can be confirmed only if "the plan has been proposed in good faith and not by any means forbidden by law". 11 U.S.C. § 1325(a)(3). It already has been recognized in this District that debtors' Chapter 13 plans which propose to discharge back child support obligations by including such obligations as a part of the unsecured class, which class is then paid a small fraction of the total amount due, are not filed in good faith and confirmation of such plans should be denied. *In re Tumbleson*, 28 B.R. 663 (D.C.D.Colo.1983).

A second type of plan is like that of the Debtors Tesh. They have proposed to classify the past due child support in a separate class of unsecured creditors and to pay that class in full out of the payments made to the Trustee before any distributions are made to the other unsecured creditors. The attempted treatment of child support arrearages in this manner raises two questions. The first question is whether it is permissible to separately classify the past due child support obligations as against the interests of the other unsecured creditors. The second question is pertinent only if separate classification is permitted as to other creditors. The question then becomes whether it is permissible to utilize Chapter 13 to delay the divorced wife or the minor child in their efforts, if any, to enforce prompt collection of the support obligations due them.

██ The Bankruptcy Code does not, by its terms, expressly bar the classification of unsecured claims. The Code specifies that if the plan classifies claims, it must provide the same treatment for each claim within a particular class. 11 U.S.C. § 1322(a)(3). The Code also provides that the plan may designate a class or classes of unsecured claims, but may not discriminate unfairly against any class so designated. 11 U.S.C. § 1322(b)(1). The plan further may include any provisions which are not inconsistent with Title 11 of United States Code. 11 U.S.C. § 1322(b)(10).

The Bankruptcy Court in this District early recognized the right of a debtor to have separate classes of unsecured debt. That issue was specifically addressed in the case of *In re Gay*, 3 B.R. 336 (Bankr.D.Colo.1980). The Court there concluded that classification is not improper so long as it is not unfairly discriminatory. In determining whether the classification is discriminatory the Court should consider a variety of factors, including:

1. The creditors' rights, if any, against third parties;

2. The importance of the classification to the debtor's "fresh start;"

3. The ability of the debtor to perform under his plan with or without the classification;

4. The propriety of each proposed classification considered with respect to the facts of each case; and,

5. The utilization of sound judicial discretion to determine whether from both the creditors' and debtor's points of view a proposed classification is unfairly discriminatory. *In re Gay, supra*, p. 338. The views expressed by the Court in the *Gay* decision, *supra*, represent a "middle of the road" approach between the opposite views of the courts. Compare *In re Iacovoni*, 2 B.R. 256 (Bankr.D.Utah 1980), and *In re Sutherland*, 3 B.R. 420 (W.D.Ark.1980).

The cases have since developed a trend to focus on a four-part test to help determine whether a particular classification is fair. The four factors considered are:

1. Whether the discrimination has a reasonable basis;

2. Whether the debtor can carry out a plan without such discrimination;

3. Whether such classification is proposed in good faith; and

4. The treatment of the class discriminated against. *In re Harris,* 62 B.R. 391 (Bankr.E.D.Mich.1986).

Because the Code presumes that creditors of like position will be treated equally, the courts additionally have held that the burden of proof on the question of whether the discrimination is fair is on the debtor. *In re Bowles,* 48 B.R. 502 (Bankr.E.D.Va. 1985); *In re Cook,* 26 B.R. 187 (Bankr.D.N. M.1982); *In re Harris, supra.* In the view of the *Harris* court the application of the four-part test is consistent with the policy of the Bankruptcy Code to allow debtors to emerge from bankruptcy with a "fresh start" and to provide them with a degree of flexibility in proposing plans which will allow them to pay their debts without undue hardship, yet exit from bankruptcy in sounder financial shape than when they filed for relief.

Classifying past-due nondischargeable child support separately in a Chapter 13 plan falls within the criteria of the four-part test enunciated and expanded upon in *Harris, supra,* as well as in the *Gay* case. It can be pointed out that the discrimination in favor of the payment of back child support has a reasonable basis since it pertains to a debt which is not dischargeable in Chapter 13. 11 U.S.C. § 1328(a)(2). Further, under *Tumbleson, supra,* the failure to pay back child support in full indicates a lack of good faith barring confirmation. Thus, it is doubtful that a Chapter 13 plan could be confirmed in most instances without a separate classification for child support, absent the relatively rare 100% payout plan. The practical effect on the remaining unsecured creditors, whose debts are not paid in full, is virtually nonexistent since their debts would be generally discharged under Chapter 7 in any event while the child support arrearages would not. In addition, court-ordered child support obligations are enforceable by contempt proceedings and failure to pay these debts can result in criminal sanctions. Under all these circumstances it has been recognized that the separate classification of child support obligations is not unfairly discriminatory within the meaning of the Code, a view to which this Court subscribes. *In re Haag,* 3 B.R. 649 (Bankr.D. Or.1980); see contra *In re Stewart,* 52 B.R. 281 (Bankr.W.D.N.Y.1985); *Matter of Curtis,* 2 B.R. 43 (Bankr.W.D.Mo.1979).

Having determined that past-due child support can be a separately classified obligation, the Court must yet determine whether a plan which separately classifies and provides for full payment of such obligations on a deferred basis under the plan runs afoul of the "good faith" confirmation requirements of Section 1325(a)(3). This issue arises because a Chapter 13 plan is, in effect, a new contract between the debtor and his creditors, modifying the payment terms of his obligations to the creditors. That contract becomes binding on the creditors by the order of confirmation. 11 U.S.C. § 1327(a). In fact, as specified in Section 1327(a), provisions of a confirmed plan bind each creditor whether or not the claim of the creditor is provided for by the plan and whether or not such creditor has objected to, has accepted or has rejected the plan. The impact on a party due child support or alimony payments which have not been made is clear. If the Court confirms a Chapter 13 plan which separately classifies such a creditor and proposes to pay the back child support, on a deferred basis, the rights of that party to the immediate payment of that nondischargeable obligation have been altered.

The question of the propriety of such a plan provision has been considered in this Bankruptcy Court in the case of *In re McCray, supra.* In the *McCray* case the debtor proposed to classify his unsecured debts, making approximately $7,400.00 of past due child support one class of unsecured debt and the remainder of his unsecured creditors a separate class. The debtor's former spouse objected and moved for relief from the automatic stay prior to confirmation of the plan to allow her to collect on her child support judgment in the state court. Recognizing that the automatic stay applied during the pendency of confirmation of the plan, Judge Brumbaugh,

nonetheless, granted the estranged wife relief from stay.

Citing *Caswell v. Lang, supra,* Judge Brumbaugh stated that Bankruptcy Courts were not intended by Congress to become domestic relations courts. He concluded that to permit the debtor to include his debt of past due child support in a Chapter 13 bankruptcy would invite bankruptcy courts to alter or modify state court decisions regarding the payment and discharge of past due child support and could serve to deprive the minor child of the necessities of life. *In re McCray, supra,* p. 12.

The propriety of the *McCray* opinion is buttressed from a review of the Colorado law applicable to accrued and unpaid child support obligations. In Colorado, once a child support or maintenance payment becomes due and is not paid, the installment becomes a judgment enforceable by levy, garnishment and other proceedings, as the case may be with any other judgment, and is not modifiable for any reason. *Burke v. Burke,* 127 Colo. 257, 255 P.2d 740 (1953); *Jenner v. Jenner,* 138 Colo. 149, 330 P.2d 544 (1958); *Engleman v. Engleman,* 145 Colo. 299, 358 P.2d 864 (1961); *In re Marriage of Walsh,* 44 Colo.App. 502, 614 P.2d 913 (1980); *In re Marriage of Warner,* 719 P.2d 363 (Colo.App.1986). It is possible for a party, subject to a court order to make support or maintenance payments, to have the order modified, but such modification can only be made effective as of and after the date the motion to modify is filed. C.R.S. 1973, § 14–10–122; *Engleman v. Engleman, supra.* Thus, the law in the State of Colorado, both by statute and by consistent opinions of its appellate courts, is clearly that past due child support or maintenance obligations, which have been unpaid, cannot be modified, nor is it possible for the court to defer the payment terms by delaying execution on the underlying judgment. *In re Marriage of Woodrum,* 618 P.2d 732 (Colo.App.1980); *In re Marriage of Gilmore,* 672 P.2d 228 (Colo. App.1983). There obviously exists in this state a strong public policy against interfering in any way with the right of a former spouse to enforce collection and full payment of outstanding arrearages for child support maintenance or alimony.

In *McCray,* the party due the support obligation was actively objecting to the plan provisions. The question then arises of whether the principles espoused in *McCray* should apply in the instant cases where the party due the support payment (whether the former wife or the State Department of Social Services) has not appeared or objected.

The party owed support obligations, whether it is the former wife, child or the State, is certainly free to contract with the debtor to arrange reasonable payment terms to allow the debtor a period of time to make up back child support or alimony. Since the Chapter 13 plan is mailed out to such parties it might be argued that their failure to appear and object indicates their approval of the plan provisions and their acceptance thereof. The Court is unwilling to engage in such assumptions. In order to effectively file an objection to a plan, a creditor needs legal counsel and advice. The former wife, who has been awarded alimony and child support by the state court, has received such awards because the court has found that they are necessary in order to maintain the expected standard of living. A debtor who has failed to meet his obligations has put his former family in a distressed financial position. Under these circumstances it is possible, indeed probable, that the wife does not have the funds available to hire an attorney, and it is equally likely that she is unable to take time off of her job or to find alternate care for her children in order to be able to attend hearings on the plan. She should not be expected to undertake such additional burdens, particularly when, without her express consent, the plan proposed by the debtor cannot be confirmed. *In re McCray, supra; In re Tumbleson, supra.*

Nor should the result differ if the wife's claim has been assigned to the State Department of Social Services. The Bankruptcy Code, in Section 523 has, by way of the 1984 amendments, made it clear that the policy of nondischargeability as to child support and alimony payments applies

whether the claim is held by the former wife or has been assigned to a governmental unit for collection. There is a strong underlying policy in favor of not making former wives or minor children dependents of the state or a burden on the welfare system. In this state, an application for Aid For Dependent Children (AFDC) acts as an assignment of child support rights to the social service agency granting the aid. C.R.S. 1973, Section 14–14–104(1)(b)(6); 26–2–111(3)(g); 26–13–106. Once that statute has been brought into play, the welfare recipient may not enter into agreements amending the support obligation without the express agreement of the department. C.R.S. 1973, Section 14–14–104(1)(b)(3). While the county welfare departments may have legal assistance available to them, their meager resources should not be consumed in having to file formal objections to plans and to appear, failing which their rights to collect may be deferred or otherwise affected. This is particularly true when Section 523(a)(5) of the code specifically places the estranged spouse and the State on the same footing.

It may well be that what a debtor proposes in his plan by way of a deferral of payment of past child support obligations may offer a reasonable and perfectly acceptable payment plan to the recipient. In reality, such a plan may often be the only opportunity that the recipient of the child support or alimony obligations will have to receive payment. It is common knowledge that many parents or former husbands flee, rather than face the responsibility of making child support or alimony payments which have become burdensome. Thus, there may be good reason for the former wife, or the Department of Social Services to agree to the plan provisions. *See, In re Adams*, 12 B.R. 540, 543 (Bankr.D.Utah 1981). However, such an agreement should not be inferred from the failure of the party owed such obligations to object.

If the debtor wishes to propose an arrangement under his Chapter 13 plan to defer the payment of the child support obligations, the debtor must bear the burden of obtaining from the party due such obligations the express agreement to have the past due claims treated in the manner proposed in the plan. If the debtor is unable to obtain the express written approval of the former spouse or Department of Social Services, then a plan which purports to treat and discharge past due child support or alimony obligations, whether by way of compromise or deferral, must be determined to fail the requirements of Section 1325(a)(3) of the Code and confirmation of such a plan must be denied.

■ This brings us to consideration of the type of plan proposed by the Debtors, Davidson and Sharon. These debtors do not purport to classify or provide for their support obligations under their plans. Instead, the budgets which these debtors have filed with the Court include provisions pursuant to which the debtors have allocated funds to be paid on a monthly basis against both current child support obligations and in repayment of past due child support obligations. Thus, under these plans the payments on the past due child support obligations are to be made separate from payments to be made to the trustee for disbursement to the creditors under the Chapter 13 plan.

It is clear that by undertaking to pay the support obligations separate from the plan payments, and to pay such obligations in full while other unsecured creditors receive a fraction of the amount due them, the debtors have, in effect, made a separate classification of the support obligations. *In re Haag, supra.* The issue of whether such classification is acceptable under Section 1322(b)(1) is the same as when the debtor provides for a separate class for the support obligations to be paid as a part of the plan payments. As this Court has already indicated, there are a variety of factors which serve to establish that such separate classification is not improper in and of itself.

Plans which purport to provide for the satisfaction of back child support through separate payments to be made by the debtor as the disbursing agent raise other kinds of problems. In order to confirm the plan the Court must find that the debtor will be

able to make all payments under the plan and to comply with the plan. 11 U.S.C. § 1325(a)(6). In the plans before the Court, at confirmation all of the property of the estate will vest in the debtors as provided for by the plan. 11 U.S.C. § 1327(b). To the extent that the plan has designated property, or a portion of the debtor's ongoing earnings, to the payment of the plan obligations, the plan is binding on the party seeking payment of past due child support obligations. 11 U.S.C. § 1327(a). However, wages and property not necessary for the completion of the plan payments are subject to the reach of the former spouse, who has not been provided for under the plan, to enforce payment of the child support obligations due her.[1] *In re Adams, supra; In re Bernstein, supra; In re Johnson,* 36 B.R. 958 (Bankr.D.Utah 1983). In this regard the *Adams* court concluded that:

> all wages over and above those paid to the trustee or creditors under a plan, and any property which the debtor does not propose to use in funding his plan returns to the debtor and becomes subject to the reach of his ex-spouse under Section 362(b)(2). Therefore, although the ex-spouse's collection action is initially held at bay by the breath of the Section 1306 estate, once confirmation occurs, a more equitable balance is struck between the needs of the debtor to rehabilitate himself and those of his dependents seeking lawful support. *In re Adams, supra,* 12 B.R. at 542.

Under Colorado law a writ of garnishment for child support is a continuing writ which has priority over any other subsequent garnishment, lien or attachment action. C.R.S. 1973, Section 14–14–105. Under C.R.S. 1973, Section 13–54–104(3), a person's "disposable earnings" may be subjected to between 50% and 55% attachment if that person is also currently supporting a wife or child and between 60% and 65% if

the individual has no current support obligations. "Disposable earnings" are defined by C.R.S. 1973, Section 13–54–104(1)(a) to be:

> ... that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

Finally, the exemptions of C.R.S. 1973, Section 13–54–102 which are applicable to other forms of garnishment do not apply to writs which are the result of judgments taken for arrearages for child support and child support debt. C.R.S. 1973, Section 13–54–106. Thus, in this state, if the wife has not agreed to the deferred payment schedule of past due child support, she will be free to proceed by way of writ of garnishment to collect such sums out of the debtor's wages which remain after the payment of his plan obligations. Further, as discussed above, those past due obligations cannot be modified by the family court. *In re Marriage of Gilmore, supra.* In the plans presently before the Court, and indeed in virtually any plan, if the wife or the State Department of Social Services pursues collection of the past due child support by way of writ of garnishment, the debtor will be unable to perform his obligations under his Chapter 13 plan, since he will be effectively deprived of any available funds to pay his basic living expenses.

Once again, the answer is that the debtor must seek the express agreement from the former spouse to accept the payments provided for in the debtor's budget in satisfaction of the past due support obligations. Absent such consent, evidenced by the written agreement of the spouse, which is not present in the cases presently before this Court, the Court cannot conclude that the debtor will be able to make all payments under the plan and to comply with the plan. The debtors' plans must, there-

---

1. It is possible for a plan to have all of the property remain in the estate until the case is closed or the plan fulfilled. This, in fact, was done in the case of *In re Denn,* 37 B.R. 33 (Bankr.D.Minn.1983). Under those circumstances there was no separate property, postconfirmation, against which the wife could levy.

While this type of case is not before the Court, it would appear that a debtor's attempt to deprive the wife of support in this manner would violate the good faith requirement of Section 1325(a)(3) and would fail in confirmation pursuant to the reasoning of the *Tumbleson* decision, *supra.*

fore, be denied confirmation pursuant to the provisions of 11 U.S.C. § 1325(a)(6).

Debtors' counsel have argued that unless they are able to utilize Chapter 13 to provide for child support, their clients are left without any effective remedies. The Court disagrees. In the case of *Matter of Garrison*, 5 B.R. 256 (Bankr.E.D.Mich.1980), the Court there addressed the issue.

Nor was it the intent of the new Bankruptcy Code to convert the bankruptcy court into family or domestic relations courts—courts that would in turn, willynilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors. Indeed, in the case now before us, the debtor through counsel urged the court to reduce his (current) child support payments from twenty-five dollars (25.00) to twelve dollars (12.00) a week. Ostensibly, this request was prompted by the realization that the debtor was financially unable to propose and consummate a plan under which he could pay his dischargeable debts and the same time comply with the state court divorce decree with regard to his nondischargeable child support obligations. We strongly suggest that Congress has, under the Bankruptcy Code, provided a remedy for the dilemma. The debtor has the option of resorting to Chapter 7 proceedings thereby ridding himself of all his dischargeable obligations. This would in turn enable him to dispose of his nondischargeable child support obligations through payment. This, we believe, represents the true intent of Congress as opposed to the staying of child support payments in reliance on Section 362 of the Code. Id., page 260.

The Court recognizes that in some instances the debtor might not qualify to be able to file a Chapter 7 case because of a prior discharge in bankruptcy. That does not deprive the debtor of the opportunity to deal with his past due child support problems. As this Court has pointed out herein, the debtor has the option of obtaining the express consent of the former spouse to have the child support payments treated within the plan. Providing for the payments in a plan has the benefit of giving some assurance to the spouse that the payments will be made, or at least that the Chapter 13 Trustee will be monitoring the debtor's performance under the plan as will the Court, and may heighten the prospects for the payment of such sums. Thus, the debtor has a way to solve his problems concerning his child support obligations either in the context of a Chapter 7 or a Chapter 13 proceeding.

As determined herein, the plan filed by the debtors Marty Eugene Tesh and Diane Rachael Tesh has not been filed in good faith and must be denied confirmation pursuant to 11 U.S.C. § 1325(a)(3). The plans filed by David Lee Davidson and by David Ross Sharon and Clydia Rose Sharon are such that the Court cannot conclude that the debtors will be able to make all payments under their plans and to comply with the plans and those plans, therefore, must be denied confirmation pursuant to 11 U.S.C. § 1325(a)(6). In each instance the defects which bar confirmation of those plans are capable of being cured by the debtors obtaining the consent of the affected party.

IT IS THEREFORE ORDERED, that the motion to confirm the plan of Marty Eugene Tesh and Diane Rachael Tesh is hereby denied, and

IT IS FURTHER ORDERED, that the motion to confirm the plan of David Lee Davidson is hereby denied, and

IT IS FURTHER ORDERED, that the motion to confirm to the plan of David Ross Sharon and Clydia Rose Sharon is hereby denied, and

IT IS FURTHER ORDERED, that the debtors in each of said cases shall have a period of thirty (30) days from the date of this order within which to file the written consent of the former spouse or Department of Social Services to whom or which is owed the obligation for past due child support, failing which in each case the Chapter 13 case will be dismissed.