**In re Kevin T. STORBERG, Debtor.**

**Bankruptcy No. 4–88–963.**

United States Bankruptcy Court,
D. Minnesota.

Dec. 5, 1988.

Ian Traquair Ball, Rasmussen & Ball, Minneapolis, Minn., for debtor.

Edward W. Bergquist, Minneapolis, Minn., for trustee.

Ann M. Taylor, Asst. Co. Atty., Minneapolis, Minn., for Mille Lacs County & Margaret Reecy.

ORDER CONFIRMING PLAN

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing to consider confirmation of the debtor's plan and on the trustee's objection to confirmation. Ian Traquair Ball appeared for the debtor, Edward W. Bergquist appeared for J.J. Mickelson, the trustee, and Ann Taylor, Assistant Hennepin County Attorney, ap-

peared on behalf of Mille Lacs County and Margaret Reecy.

### Background

The debtor filed this chapter 13 case ·on March 11, 1988. With his petition and schedules, he filed his plan providing for payments to the trustee of $240.00 per month. After provision for secured and priority claims, that plan provided for a third class of claims for those debts described in § 523(a)(5),[1] a fourth class of claims consisting of unsecured claims which are less than or reduced to $100.00, and a fifth class consisting of all other unsecured claims. The plan provided for paying the third and fourth classes in full, with the balance to be paid to the fifth class, which the debtor estimated would result in a dividend of fifty percent.

The meeting of creditors was held on April 20, 1988, and a confirmation hearing was originally set for May 19, 1988. The trustee orally objected to confirmation of the plan and by agreement, the confirmation hearing was continued to June 16, 1988, and further continued, without resolution of the objection, to July 21, 1988, August 18, 1988, September 15, 1988, October 20, 1988, and November 15, 1988.

The debtor filed an amended plan on September 9, 1988, which was identical to the original plan except that it reduced the payments under the plan to $170.00 per month, thereby reducing the estimated dividend to the fifth class unsecured creditors to eighteen percent. The trustee filed a formal objection to confirmation on October 18, 1988, and the objection was finally argued on November 8, 1988. The trustee objects to confirmation on the grounds that the different treatment of the third and fifth classes unfairly discriminates against the fifth class.

---

1. 11 U.S.C. § 523(a)(5) provides an exception to discharge in certain cases for debts "to a spouse, a former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child...." Margaret Reecy, the debtor's former spouse filed a claim for $450.00

### Discussion

The trustee relies on § 1322(b)(1) which provides:

(b) Subject to subsections (a)' and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in sec- ·tion 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1).

Section 1122 reads:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

Lastly, § 1322(a)(3) provides:

(a) The plan shall—

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a)(3).

While the courts struggled with these classifications problems for a number of years, several rules have evolved and appear to be fairly well settled:

(1) A plan may have more than one class of unsecured creditors.

(2) All of the claims in a class must be substantially similar.

which clearly falls within the third class. Mille Lacs County Support and Collections has filed a claim for $1,350.00 for "reimbursement of AFDC." Mille Lacs County's claim does not appear to be within the third class.

(3) The plan need not put substantially similar claims in the same class.

(4) The plan must provide the same treatment for each claim within a particular class.

(5) The plan may not discriminate unfairly against any class.

(6) It does not constitute unfair discrimination to pay more to the small claims or administrative convenience class described in § 1122(b).[2]

(7) It does not constitute unfair discrimination to favor a class of claims consisting of consumer debts on which another individual is liable with the debtor.[3]

Of all of these rules, the most difficult to apply and the one at issue here is Rule 5. Obviously, by allowing for separate classes of unsecured claims, Congress anticipated some discrimination, otherwise separate classes would have no significance. It is only unfair discrimination that is prohibited.

■■■ Those cases that involve some sort of personal animus or attempt to exclude a class of creditors because of their past relationships to the debtor, almost always constitute unfair discrimination. However, it is cases like this one, where the debtor's purpose is to discriminate in favor of one class, that are more troublesome. Here the concept of fairness is a question of public policy. In reviewing discrimination as a matter of public policy, I recognize the helpfulness of the factors enunciated in *In re Dziedzic*, 9 B.R. 424 (Bktcy.S.D.Tex.1981) and subsequently followed by large numbers of courts and seems to be the rule most often applied to these situations:

(1) Whether the discrimination has a reasonable basis;

(2) Whether the debtor can carry out a plan without such discrimination;

(3) Whether such discrimination is proposed in good faith; and

(4) The treatment of the class discriminated against.

9 B.R. at 427.

■■■ However, in trying to identify the sorts of overarching policy considerations that will allow discrimination, it is necessary for a judge to be careful not to use a personal view of what class of creditors are to be specially protected by allowing chapter 13 plans to discriminate in their favor. In cases such as this, a court should look to other manifestations of public policy to determine whether or not a class of creditors deserves to be treated specially in a chapter 13 plan. The ordinary way that public policy is manifested is through legislation. In the case of claimants for child support, there is ample support in state and federal legislation to illustrate that public policy specially treats those claimants and therefore a debtor may specially treat them in a chapter 13 plan as well. On the state level, the Minnesota statutes are rife with examples of the Minnesota legislature's special treatment of child support payments. For example, Minn.Stat. § 510.07, dealing with the proceeds of the sale of a homestead, provides the proceeds of such sale are exempt for one year "except that the proceeds of the sale are not exempt from a judgment or debt for a court ordered child support or maintenance obligation in arrears." Other examples of statutory special treatment for child support obligations are found in the following statutes:

2. The statute itself does not say that. Section 1122(b) is a classification section and does not deal with treatment. In fact, § 1122(b) is only an example of § 1122(a). However, it has always been assumed that the purpose of § 1122(b) was to allow special treatment for small claims, so that they could be eliminated early and reduce the number of claims that would have to be paid over time.

3. Prior to 1984, it was fairly clearly the opposite. The language in § 1322(b)(1) allowing for

such different treatment was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98–353. Prior to that time, the courts had almost unanimously disapproved such separate treatment as unfairly discriminating against other unsecured creditors. The clear purpose of the 1984 amendment was to change that result, although at least one court has resisted the change. *See In re Easley*, 72 B.R. 948, 955–956 (Bktcy.M.D.Tenn.1987).

Minn.Stat. § 268.072 Child Support Intercept of Unemployment Benefits,

Minn.Stat. Chap. 270A Revenue Recapture Act,

Minn.Stat. § 393.07 subd. 9 empowering the county welfare board to enforce child support payments,

Minn.Stat. Chap. 518C The Revised Uniform Reciprocal Enforcement of Support Act,

Minn.Stat. § 548.091 providing special procedures for obtaining judgments for support and maintenance obligations,

Minn.Stat. § 588.02 providing special contempt powers in the case of disobedience of court ordered child support orders,

Minn.Stat. § 609.375 making it a crime, under certain circumstances, to fail to pay child support,

Minn.Stat. § 518.24 providing for security and sequestration as a mechanism for enforcing child support orders, and

Minn.Stat. § 518.611 and Minn.Stat. § 518.613 income withholding as a mechanism for enforcing child support orders.

Similarly, federal statutes contain special collection provisions for collecting child support obligations by the Secretary of the Treasury. 42 U.S.C. § 652(b). The Bankruptcy Code itself, of course, contains several provisions specially favoring child support, including an exception to the automatic stay for collection of such support from property that is not property of the estate, 11 U.S.C. § 362(b)(2) and an exception to discharge, 11 U.S.C. § 523(a)(5). In fact, other than certain long term debts, alimony support and maintenance constitute the only exception to discharge in a chapter 13 case. 11 U.S.C. § 1328(a)(1).

Almost all of this legislation is of recent origin and is a response to the national disgrace of failure by noncustodial parents to provide for the support of their children. In this case we have a debtor who has fallen behind in his child support, but wishes to use chapter 13 as a vehicle to cure arrearages and remain current. It is difficult to justify discouraging him in what should be seen as an admirable endeavor.[4] Thus, in light of the overwhelming public policy in favor of providing for support of children, I cannot say that the debtor's separate classification for such support is unfair.

The result comports with the other reported cases which have faced this issue and have allowed special treatment for child support obligations. *See In re Davidson,* 72 B.R. 384 (Bktcy.D.Colo.1987) (concluding that separate classification for past due nondischargeable child support does not unfairly discriminate against other unsecured creditors, but concluding that such a plan could not be confirmed without the consent of the obligee of the past due support); *In re Haag,* 3 B.R. 649 (Bktcy.D. Or.1980) (plan providing for 100% payment for past due child support and 25% payment to other unsecured creditors did not unfairly discriminate); *In re Curtis,* 2 B.R. 43 (Bktcy.W.D.Mo.1979) (plan providing for 100% payment of past due child support and 10% payment to other unsecured creditors did not unfairly discriminate). *But see In re Stewart,* 52 B.R. 281 (Bktcy.W.D. N.Y.1985).

There is at least one sound practical reason to allow special treatment for child support payments. As noted, § 362(b)(2) provides that collection of alimony, maintenance, or support from property that is not property of the estate is not prohibited by the automatic stay. Before confirmation, the expanded definition of property of the estate found in § 1306 would protect the debtor's assets and earnings from any attempt by a claimant to collect alimony, support or maintenance. However, the ordinary rule is that confirmation of a plan revests all of the property of the estate in the debtor. 11 U.S.C. § 1327(b). While the debtor's plan and this court's form plan change the general rule and provide that the property of the estate will not vest in

---

**4.** This is not to say that the debtor's motives are necessarily all together altruistic. As noted, the debtor's obligations for his support arrearages would be excepted from discharge in this case as well as any chapter 7 case he might have filed.

the debtor until dismissal, conversion, or discharge, it would be difficult to deny relief from the automatic stay to a holder of a claim for alimony, support, or maintenance if the debtor's plan did not provide for payment in full. Thus, as a practical matter, it would be virtually impossible to propose a successful chapter 13 plan which did not provide for payment in full of alimony, support, or maintenance claims. Thus, it would not be unfair discrimination to provide such payment to such creditors even though it resulted in other unsecured creditors receiving less.

THEREFORE, IT IS ORDERED:

1. The trustee's objection to confirmation is overruled.

2. The debtor's plan dated April 20, 1988 and filed September 9, 1988 is confirmed.