**In re Lawrence Edmund WHITTAKER, Debtor.**

**Bankruptcy No. 4-89-6177.**

United States Bankruptcy Court,
D. Minnesota.

May 7, 1990.

Kenneth E. Keate, St. Paul, Minn., for debtor.

J.J. Mickelson, Minneapolis, Minn., trustee.

Thomas J. Lallier, Mackall, Crounse & Moore, Minneapolis, Minn., for trustee.

## MEMORANDUM ORDER OVERRULING OBJECTION TO CONFIRMATION

NANCY C. DREHER, Bankruptcy Judge.

Debtor's Chapter 13 plan came on for confirmation hearing before the undersigned on the 5th day of April, 1990. The trustee objected to confirmation, alleging that the Debtor's plan has not been proposed in good faith and that the separate classification of unsecured creditors provided for in the plan does not comply with 11 U.S.C. § 1322(b)(1). The appearances were as follows: Thomas Lallier for the trustee; J.J. Mickelson, trustee; and Kenneth Keate for the Debtor. This Court has jurisdiction over the parties to and the subject matter

of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a "core proceeding" which this Court may hear and finally determine pursuant to 28 U.S.C. § 157(b)(2)(L).

Debtor filed his voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 18, 1989. With his petition and schedules, Debtor filed his plan providing for payments to the trustee of $435.00 per month for 60 months, amounting to total payments of $26,100.00. Debtor's schedules listed debts of $4000 in secured debt, $4843.88 in priority unsecured tax debt, and $47,039.94 in nonpriority unsecured debt.[1]

Debtor's plan provided that the secured debt was to be paid in full before payment of any other debts, except that the trustee for cause could elect to make periodic payments on the secured debt pursuant to 11 U.S.C. § 361 and the terms of the security agreement. Next, the priority tax debt was to be paid in full prior to any payment of nonpriority unsecured claims.

Debtor's plan divided the nonpriority unsecured claims into three classes, enumerated Classes 3 through 5. Class 3 consisted of $6,566.45 in consumer debts on which a co-debtor is liable with the Debtor and a $5,055.84 debt to Debtor's former spouse for an arrearage in child support payments. All the debts in Class 3 were to be paid in full before payment of any debts in Classes 4 and 5.[2] Class 4 consisted of claims less than $100, which were to be paid in full, and Class 5 consisted of all other claims, which were to receive *pro rata* payments of 10% of each claim.

■ The trustee asserts two objections to confirmation of Debtor's plan. First, he contends that any plan that proposes to modify an obligation for a child support

arrearage has not been proposed in good faith, and therefore cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(3). *See Caswell v. Lang (In re Caswell),* 757 F.2d 608 (4th Cir.1985). Second, he contends that the Debtor's plan must modify his child support arrearage obligation to a greater extent than currently proposed, or else it will discriminate unfairly against unsecured creditors:

> Subject to subsections (a) and (c) of this section, the plan may—
>
> > (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not *discriminate unfairly* against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1) (emphasis added). The trustee contends that the $5,055.84 debt for Debtor's child support arrearage obligation should be included in Class 5 rather than Class 3, in which case Debtor's former spouse would receive *pro rata* payment rather than payment in full on her claim. The trustee contends that the payment in full of the child support arrearage obligation discriminates unfairly against the nonpriority unsecured claims included in Class 5. A plan that fails to comply with section 1322(b)(1) because it discriminates unfairly against unsecured creditors cannot be confirmed. 11 U.S.C. § 1325(a)(1).

If the trustee's analysis were correct, any debtor with a child support arrearage obligation would be trapped *a fronte praecipitium a tergo lupi.*[3] The trustee contends that, in order to comply with section

---

**1.** Debtor's plan indicates that his total nonpriority unsecured debt is $35,417.65, but this figure excludes $11,622.29 in nonpriority unsecured debt that is treated by the plan as quasi-priority debt.

**2.** Debtor's counsel has conceded that the inclusion of the child support arrearage obligation and the co-debtor obligation in the same class is inappropriate. Debtor will therefore file an amended plan which provides that Class "3a",

the arrearage claim, will be paid in full before any payment is made to Class "3b", the co-debtor claim, and that Class "3b" will be paid in full before any payment is made to Classes 4 and 5.

**3.** Literally translated, this phrase means "a precipice in front, wolves behind." In common English parlance, we might say "between a rock and a hard place" or "between the devil and the deep blue sea."

1322(b)(1), a child support arrearage obligation must be classified with the general unsecured claims,[4] in which case the arrearage obligation would have to be treated in the same manner as the other claims in that class. 11 U.S.C. § 1322(a)(3). Any such treatment, unless the debtor proposed a 100% plan and had no secured or priority debt, would entail modification of state-law mandated arrearage payment requirements. *See* Minn.Stat. § 518.611. Therefore, according to the trustee, virtually any plan that proposed to make payments within the plan on a child support arrearage obligation would not be proposed in good faith, and therefore would not be confirmable. Furthermore, payment outside the plan would be prohibited under the trustee's analysis, since such payments discriminate, unfairly according to the trustee, against unsecured creditors. *C.f. In re Haag,* 3 B.R. 649 (Bktcy.D.Or.1980) (holding that payment in full of child support arrearage outside of plan constituted discrimination against unsecured claims, but that such payment was not unfair); *In re Davidson,* 72 B.R. 384 (Bktcy.D.Colo.1987) (same holding).

■ Thus, the trustee's position is that Chapter 13 relief should be denied to virtually all debtors with child support arrearage obligations. I, like many other bankruptcy judges throughout the nation, am troubled by the impact of Chapter 13 filings on the collection of child support obligations. Some courts have responded to this concern by requiring payment of arrearage obligations outside the plan, and others have granted the child support claimant veto power over the relevant plan provisions. *See Caswell,* 757 F.2d at 611; *In re Davidson,* 72 B.R. at 389. Both of these approaches, however, result in plans that are not confirmable because they do not comply with the trustee's interpretation of section 1322(b)(1), unless under the *Davidson* approach the child support claimant is inexplicably generous and consents to having his or her claim treated as a general unsecured claim. I do not believe

that Congress intended to effectively deny Chapter 13 relief to virtually all debtors with child support arrearage obligations:

> In this case we have a debtor who has fallen behind in his child support, but wishes to use chapter 13 as a vehicle to cure arrearages and remain current. It is difficult to justify discouraging him in what should be seen as an admirable endeavor.

*In re Storberg,* 94 B.R. 144, 147 (Bktcy.D. Minn.1988) (footnote omitted). Therefore, I conclude that the trustee's objection that the Debtor's plan has not been filed in good faith must be overruled.

■ I will turn now to the trustee's second objection. The trustee cites neither a published case nor an unpublished decision from this district holding that payment in full of a child support arrearage claim discriminates unfairly against other nonpriority unsecured claims receiving less than payment in full, and this Court's research reveals only one such reported case. *See In re Stewart,* 52 B.R. 281 (Bktcy.W.D.N. Y.1985). In contrast, a number of courts, including a court in this district, have issued reported decisions holding that such different treatment of a child support arrearage claim does not discriminate against other nonpriority unsecured claims receiving inferior treatment. *See In re Storberg,* 94 B.R. 144; *In re Davidson,* 72 B.R. 384; *In re Haag,* 3 B.R. 649; *In re Curtis,* 2 B.R. 43 (Bktcy.W.D.Mo.1979). Clearly, section 1322(b)(1) authorizes a Chapter 13 plan to treat certain nonpriority unsecured claims differently than the rest:

> Obviously, by allowing for separate classes of unsecured claims, Congress anticipated some discrimination, otherwise separate classes would have no significance. It is only unfair discrimination that is prohibited.

*In re Storberg,* 94 B.R. at 146.

■ I have decided to follow the result reached by the *Davidson* court, which held that a plan paying child support arrearage

---

**4.** The trustee does not object to the separate classification of the co-debtor obligation and the

unsecured claims under $100.

claim in full before paying $170 to holders of general unsecured claims totaling $6680 did not unfairly discriminate against general unsecured creditors because the plan met the four-part test courts frequently apply to determine fairness:

(1) Whether the discrimination has a reasonable basis;

(2) Whether the debtor can carry out a plan without such discrimination;

(3) Whether such discrimination is proposed in good faith; and

(4) The treatment of the class discriminated against.

*In re Davidson*, 72 B.R. at 387 (citing *In re Harris*, 62 B.R. 391, 394 (Bktcy.E.D.Mich. 1986)). The same test was favorably mentioned by Chief Judge Kressel in the *Storberg* case. *In re Storberg*, 94 B.R. at 146 (citing *In re Dziedzic*, 9 B.R. 424, 427 (Bktcy.S.D.Tex.1981)). Other courts, however, have concluded that only first part of the four-part test, whether there is a reasonable basis for discrimination, should be considered, although the fourth part, the treatment of the class discriminated against, is already an aspect of the "reasonable basis" consideration. *In re Lawson*, 93 B.R. 979, 982 (Bktcy.N.D.Ill.1988).

Different treatment of child support arrearage obligations has a reasonable basis. Child support obligations cannot be discharged by a Chapter 13 plan. 11 U.S.C. § 1328(a)(2). Payment in full of the nondischargeable child support arrearage obligation is reasonably related to the Debtor's legitimate interest in not being burdened with a substantial debt at the completion of his Chapter 13 plan, and thus the different treatment of the child support arrearage claim does not discriminate unfairly against the nonpriority unsecured claims included in Class 5. *In re Lawson*, 93 B.R. at 984. And while I am troubled by the fact that general unsecured creditors will receive only 10% payment on their claims because of the discriminatory treatment thereof, the alternative that the trustee in essence urges, conversion to Chapter 7, would probably result in their claims being discharged in full:

The practical effect on the remaining unsecured creditors, whose debts are not paid in full, is virtually non-existent since their debts would generally be discharged under Chapter 7 in any event....

*In re Davidson*, 72 B.R. at 387. Consequently, the trustee's second objection must be overruled.

ACCORDINGLY, IT IS HEREBY ORDERED that the trustee's objections to confirmation of the Debtor's Chapter 13 plan are overruled.