**In re Robert A. SCHEIBER and Victoria S. Scheiber, Debtors.**

**Bankruptcy No. 4–91–2496.**

United States Bankruptcy Court,
D. Minnesota.

Aug. 1, 1991.

Stephen J. Creasey, Minneapolis, Minn., for trustee.

Mark L. Soule, Plymouth, Minn., for debtors.

## ORDER DENYING CONFIRMATION

### ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing to consider confirmation of the debtors' Chapter 13 plan and the trustee's objections to confirmation of the plan. Stephen J. Creasey appeared on behalf of the trustee and Mark L. Soule appeared on behalf of the debtors. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 201.

1. Although the plan itself does not specifically state how long the debtors will make payments under the plan, it appears that everyone assumes the debtors will make plan payments for 60 months.

2. This objection misses the mark. Section 1322(b)(1) incorporates the § 1122 require-

This is a core proceeding under § 157(b)(2)(L). Based on the memoranda and arguments of counsel, and the file in this case, I make the following memorandum order.

## FACTUAL BACKGROUND

On April 9, 1991, the debtors filed this Chapter 13 case. In their petition the debtors listed $10,548.21 in secured claims, $6,692.70 in priority unsecured claims and $17,758.01 in non-priority unsecured claims. Included in the total amount of the non-priority unsecured claims is a $7,500.00 student loan claim.

The debtors' plan indicates that the debtors will pay $450.00 per month to the trustee[1]. Out of the total payment of $27,000.00, $600.00 will be paid to the debtors' attorney and approximately $1,350.00 will be paid to the Chapter 13 trustee as his fee. The debtors' plan proposes to pay the secured claims and the priority unsecured claims in full as required by 11 U.S.C. §§ 1325(a)(5)(B) and 1322(a)(2) respectively. The plan also proposes to pay the $7,500.00 non-priority unsecured student loan claim in full as a "third priority behind taxes...." Finally, the plan proposes to pay 3.5% of the remaining $10,258.01 in non-priority unsecured claims.

The parties seem to agree that if the student loan claim was paid pro rata with the other non-priority unsecured claims, the unsecured creditors, including the student loan creditor, would receive approximately 50% of their total claims.

The trustee objects to confirmation on the grounds that:

1) The plan improperly classifies an unsecured claim in violation of 11 U.S.C. § 1322[2];

ments of classification. 11 U.S.C. § 1322(b)(1). Section 1122 requires only that all members of a class have substantially similar claims. 11 U.S.C. § 1122(a). Clearly that is true here. The issue in this case is a treatment question not a classification issue. *See In re Storberg,* 94 B.R. 144, 145–46 (Bktcy.D.Minn.1988).

2) The plan unfairly discriminates against the class of general unsecured creditors; and

3) The plan was not proposed in good faith.

## DISCUSSION

■ The real issue in this case is whether the debtors' plan unfairly discriminates against the class of unsecured claims.

Section 1322(b)(1) provides in part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

    (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; ...

11 U.S.C. § 1322(b)(1).

Section 1122(a) requires that all claims in a particular class be substantially similar to other claims in that class. 11 U.S.C. § 1122(a). If a plan classifies claims, § 1322(a)(3) requires the plan "provide the same treatment for each claim within a particular class." 11 U.S.C. § 1322(a)(3).

■ The Code, however, does not require that all similar claims be placed in the same class. In *Hanson v. First Bank of South Dakota, N.A.,* the court held that similar claims can be separately classified but "[t]he debtor's discretion to place similar claims in different classes is not unlimited, however," *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1313 (8th Cir.1987). A plan can even provide for discrimination among classes of similar claims so long as the classification does not *unfairly* discriminate against any class. *Storberg,* 94 B.R. at 146.

■ The debtors carry the burden of proving that the plan does not unfairly discriminate against any class. *In re Davidson,* 72 B.R. 384, 387 (Bktcy.D.Colo. 1987).

The debtors cite cases dealing with 100% payment of child support arrearage obligations under a chapter 13 plan as support for their proposed plan. *See: In re Storberg,* 94 B.R. 144 (Bktcy.D.Minn.1988); *In re Whittaker,* 113 B.R. 531 (Bktcy.D.Minn. 1990); *In re Leser,* No. 4–90–57 (D.Minn. August 23, 1990), *appeal docketed,* 939 F.2d 669 (8th Cir.1991). Although these cases are illustrative of the basic principles involved in determining if a class is unfairly discriminated against, they are not precedent for student loan cases.

■ In *Storberg,* I confirmed a plan in which the debtor classified child support arrearage obligations separately from other unsecured claims. The plan proposed to pay 100% of the child support arrearage and only 18% to the other unsecured creditors. I stated "in light of the overwhelming public policy in favor of providing for support of children, I cannot say that the debtor's separate classification for such support is unfair." *Storberg,* 94 B.R. at 147. In that case, the fact that the separately classified debt was nondischargeable under § 523(a)(5), was not a major factor. The focal point was the nature of the creditor and the nature of the debt. The best interests of the debtor should not be determinative in deciding whether the plan unfairly discriminates against any class.

In *Storberg,* the strong public policy of ensuring the support of children was the major focus. The opinion cites to examples of statutory special treatment for child support obligations. *Storberg,* 94 B.R. at 147. Public policy ensuring repayment of student loans is not as significant. In this case, the debtors argue "the entire educational system in the United States hinges on student loan availability which in turn requires the repayment of student loans." To the extent this is true, Congress has remedied the situation by amending 11 U.S.C. § 1328. The fact that Congress amended § 1328(a)(2) to except from discharge educational loans as specified in 11 U.S.C. § 523(a)(8) indicates that Congress insists that debtors repay their student loans but this does not evidence a position as favored in public policy as are alimony and child support payments.

If all non-priority unsecured creditors shared equally, both the debtors and the creditors would benefit significantly. Dur-

ing the course of the plan, the automatic stay will protect the debtors from their creditors. At the end of the plan, the non-priority unsecured creditors will have received approximately 50% of their claims rather than 3.5%. The remaining 50% of the unsecured debt, except the student loan obligation, will be discharged and the debtors will have paid approximately 50% of their nondischargeable student loan obligations. This will leave the debtors with a student loan debt of approximately $3,750.00 to continue repaying once their Chapter 13 plan has been completed.

The debtors concede that the student loans are nondischargeable. This is true only if paying the loans is not an undue hardship on the debtors. 11 U.S.C. § 523(a)(8)(B). If the debtors' plan payments are equally divided among all of the unsecured creditors and 50% of the student loans are paid during the course of the plan, paying the remaining 50% should not be an undue hardship either.

Although the debtors believe that this would prevent them from receiving a "fresh start" the public policy behind paying 100% of the student loans is not sufficient enough to deprive the other unsecured creditors of the additional 46.5% they could receive under this plan. Therefore, I find that the plan unfairly discriminates against the class of non-priority unsecured creditors.

The trustee also objects to confirmation on the grounds that the plan was not proposed in good faith. Since I have already concluded that the plan is unconfirmable, I do not have to reach the issue of whether the plan was proposed in good faith.

## CONCLUSION

The debtors' plan cannot be confirmed because it does not comply with 11 U.S.C. § 1322(b)(1)

THEREFORE, IT IS ORDERED:

Confirmation of the debtors' plan dated April 8, 1991, and filed April 9, 1991, is denied.