**In re Carl SANTA MARIA d/b/a Carl's Auto Sales, Debtor.**

**Bankruptcy No. 90–02045.**

United States Bankruptcy Court,
N.D. New York.

April 10, 1991.

---

**34**

James F. Selbach, Syracuse, N.Y., Goldbas & Goldbas, (Mark Wolber, of counsel), Utica, N.Y., for Janice Santa Maria.

Mark W. Swimelar, Syracuse, N.Y., Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of an objection filed by Janice Santa Maria ("Santa Maria") to the Chapter 13 plan proposed by her ex-spouse, Carl Santa Maria d/b/a Carl's Auto Sales ("Debtor"). Argument on the objection was heard on December 11, 1990 in Utica, New York and the matter was finally submitted for decision on January 2, 1991.

### JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b), § 157(a), (b)(2) and (b)(2)(L).

### FACTS

Prior to the filing of the Debtor's petition, he and Santa Maria, the instant objectant, were divorced by judgment dated February 8, 1990. Santa Maria's objection indicates that the terms of the judgment of divorce obligated the Debtor, *inter alia*, to pay her the sum of $30,000 as her share of the equitable distribution of the marital property by June 1, 1990, as well as $75 per week per child as support for their two daughters commencing March 1, 1990.

On August 21, 1990, the Debtor filed his voluntary petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

The Debtor's Chapter 13 Statement filed with his petition provides that he earned $70,000 in the previous calendar year and that he currently pays the sum of $150 per month to Santa Maria for support which he characterizes as "disputed."[1] He additionally lists Santa Maria in Schedule A–3 as the holder of two unsecured, non-priority claims in the amounts of $2,000 which he characterizes as "alleged child support (disputed)," and $30,000 which he characterizes as a "distribution award."

The Debtor also lists himself as the sole owner in "fee simple" of the former marital residence located at 2 Horace Avenue, Whitesboro, New York which he values at $193,000.

The Debtor lists total indebtedness of $59,159.46 and total assets in the amount of $195,300. He reports in his Schedule of Current Income and Expenses that the amount "available" to him monthly as income is $2,670. He also lists total monthly expenditures in the amount of $1,520. Neither monthly alimony nor child support payments are reflected in his budget of itemized expenditures.

The Debtor's Chapter 13 plan filed on October 12, 1990 provides for sixty monthly payments to the Chapter 13 Trustee in the amount of $1,150 per month. The plan proposes that "unsecured creditors whose claims are duly allowed" will receive 100% dividend on their claims.

### ARGUMENTS

Santa Maria claims that the Debtor has failed to comply with the state court's order regarding child support and the equitable distribution of the marital property which together comprise $32,000 of his total of $45,753 of unsecured debt. She points out that, according to his schedules, the Debtor has only approximately $14,000 remaining in other unsecured priority debt while retaining approximately $140,000 in equity in the marital residence during the proposed five year course of the plan.

---

1. It has subsequently been clarified that, contrary to this assertion, he was refusing to pay his support obligation of $150 per week.

These circumstances, she argues, indicates that the plan was not proposed in good faith and is actually an "effort to stymie me" in obtaining her equitable distribution award. (Santa Maria's Objection sworn to November 2, 1990 and filed November 8, 1990 at para. 9).

She also objects to the Debtor's representation in his petition that he is the sole owner of the residence at 2 Horace Avenue. Santa Maria contends that this was the former marital residence in which she retains a one-half interest.

At the December 11, 1990 hearing Santa Maria also alleged that the Debtor owned a "business" which he sold prior to filing his petition and used the proceeds to pay some of his creditors. She asserts that she did not receive any of the proceeds from this sale.

The Debtor does not dispute that Santa Maria may be a one-half owner of the real property located at 2 Horace Avenue regarding which he represents himself as "fee simple" owner in his schedules. He argues that if she is half owner of the property, her $30,000 distributive award is adequately protected in view of its value. He further contends that she is due nothing more than 100% of her claim over the life of the plan, if ultimately "allowed," regardless of the fact that it is in the nature of a state court ordered child support and equitable distribution.

At the December 11, 1990 hearing, the Chapter 13 Trustee recommended confirmation of the instant plan based upon its 100% dividend to unsecured creditors.

## DISCUSSION

 Code § 1325(a) provides the conditions under which a bankruptcy court is without discretion to deny confirmation of a Chapter 13 plan. *See In re Siegfried,* 114 B.R. 358, 360 (Bankr.N.D.N.Y.1990). However, the court has discretion to confirm a plan which fails to meet all of the criteria set forth under Code § 1325(a). *See id.;* 5 King, COLLIER ON BANKRUPTCY ¶ 1325.01[1] (15th ed. 1990). Accordingly, while the instant plan's failure to meet all of the criteria does not preclude its confirmation, the Court observes that to do so under the facts of this case would be an abuse of its discretion.

 The plan proposes the 100% repayment of unsecured claims, over half of which are comprised of his debt to Santa Maria, over a sixty month period. Code § 1322(c) provides that a plan's repayment period may not be "over a period that is longer than three years, unless the court, for cause, approves a longer period...." No "cause" has been shown which would provide a basis for granting a five year repayment period. More significantly, this Debtor seeks the extended repayment period in the face of his gross income for the 1989 calendar year of $70,000 (see question # 4 of Debtor's Chapter 13 Statement), as well as his apparent shared ownership (which he misrepresents in his schedule as an exclusive "fee simple" ownership) in the unmortgaged marital residence at 2 Horace Avenue which he values at $193,000. Thus, the Debtor seeks not only to frustrate the obligation to support his dependents and render them unable to enforce his state court ordered obligation, but also to extend to the maximum permissible under the Code the period of repayment while retaining assets, the value of which is sufficient to apparently pay their claims in full immediately. Cause for extending the repayment period is lacking under Code § 1322(c).[2]

---

**2.** In addition, in the Debtor's Schedule of Current Income and Expenditures, he lists several expenses which are suspect. He includes as monthly expenses the amounts of $190 for "utilities," $525 for "food" and $100 for "home maintenance." The amounts attributed to utilities and food are extraordinarily high in view of the fact that his dependents no longer reside with him thereby decreasing the use of utilities and amounts necessary for food. The monthly expense of $100 for home maintenance is vague at best. While the Court makes no finding with regard to these expenses, it is observed that they pose a question of disposable income which, pursuant to Code § 1325(b)(1), cannot be raised *sua sponte* by the Court.

However, the "accuracy of the bankruptcy papers" *is* a factor properly considered in assessing good faith under Code § 1325(a)(3). *See In re Sutliff,* 79 B.R. 151, 154 (Bankr.N.D.N.Y.1987). As the "accuracy" of the Debtor's cur-

This brings the Court to consideration of the "best interest of the creditors test" pursuant to Code § 1325(a)(4). The Debtor lists in his schedules his ownership of property with a value of $195,300 and total indebtedness of $59,082.46. At the December 11, 1990 hearing, Debtor's counsel asserted that the plan met the best interest test as it provided for payment of claims "in full" over the proposed five year repayment period without interest. The Court concludes, however, that under these facts the best interest test *requires* the payment of interest on unsecured claims.

"When liquidation will result in full payment of all allowed unsecured claims, a debtor cannot defer payment of the claims without providing interest payments to the creditors." *Hardy v. Cinco Federal Credit Union*, 755 F.2d 75, 78 (6th Cir.1985). The language of Code § 1325(a)(4) does not require merely a "dollar-for-dollar exchange extended over a five year period." *Id.* at 77.

Here, the real property at 2 Horace Avenue is valued by the Debtor at $193,000. The Debtor's schedules indicate that the property is not encumbered by a mortgage and that the Debtor has no secured debt. Thus, the Debtor evidently possesses a maximum equity in the property of $193,-000 and a minimum equity of $96,500 depending upon his ownership, either of which would be available to satisfy his aggregate indebtedness in the amount of $59,082, of which $45,753 is unsecured debt, in a hypothetical liquidation. Because such a liquidation would result in full payment of all known unsecured claims (presuming they would be all allowed), Code § 1325(a)(4) requires that interest be included on the deferred payments which would result in the present value of the allowed claims. The failure of the plan to provide present value under these facts compels the conclusion that the plan is unconfirmable as it does not meet the best interest of creditors test.

The Court turns next to the principal objection leveled by Santa Maria at the Debtor's plan which alleges that the plan was not proposed in good faith pursuant to Code § 1325(a)(3).

Under Chapter 13, the good faith inquiry is broad in its determination of "whether under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the Chapter] in the proposal." *See e.g.*, *In re Sutliff*, 79 B.R. 151, 154 (Bankr.N.D.N.Y.1987) (citations omitted).

While the plan does not specifically refer to Santa Maria's claim comprised of $30,-000 in an equitable distribution award and $2,000 in child support arrearages, Debtor's counsel asserted at the December 11, 1990 hearing that the plan provides for the payment of her "allowed" claim in full without interest over the course of sixty months.[3] No provision in his monthly budget or plan has been included for maintaining current payments on his child support obligations.[4] The Debtor characterizes the $2,000 claim in his Schedule A-3 as "alleged child support (disputed)."

In contrast to the Debtor's characterization of his child support as being an

---

rent expense schedule is merely suspect, in the absence of more probative evidence of the Debtor's actual expenses it does not at this time establish either good or bad faith. Some inquiry, however, appears to be warranted.

3. The Debtor does not dispute Santa Maria's allegation in her objection that since the filing of his petition, his cessation of payments to Santa Maria of his child support obligation ordered by the state court has continued.

4. It is noteworthy that the Debtor has also sought to enjoin Santa Maria from enforcing the state court child support order by way of a temporary restraining order and an order to show cause which was made returnable in this

Court on March 20, 1991. At the March 20 hearing, Santa Maria's counsel conveyed to the Court that the state court proceeding had been withdrawn subject to refiling retroactive to the original filing date. The Court dissolved the Debtor's temporary restraining order and suggested to Santa Maria that a motion to lift the automatic stay for "cause" pursuant to Code § 362(d)(1) would be required in order to proceed against the Debtor in state court. A proper purpose for such a motion would be to fix the amount of the arrearage, if any, and a schedule of repayment of any arrearage. At this date no motion to lift the stay has been filed by Santa Maria.

"alleged" and "disputed" obligation in the sum of $150 per week, it appears that the Debtor has been found by the Oneida County Support Collection Unit to be in arrears on his *actual* weekly child support obligation.[5] The Debtor's failure to include any provision in his plan for resolution of his "disputed" child support obligation, while refusing to make payments post petition, together with his efforts to impede Santa Maria's resolution of that "dispute" in the appropriate forum, indicates a use of Chapter 13 in an attempt to frustrate collection or other resolution of the matter rather than propose repayment. The Debtor's actions referred to above display an intent to divest Santa Maria of any legal ability to enforce payment of child support unless he chooses to affirmatively move against the obligation or until his case is dismissed or finally closed. The plan thus was proposed in an "inequitable manner." *See In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982).

It is unlikely Congress intended that Chapter 13 be used to "thwart and impede the enforcement of nondischargeable alimony and child support obligations by the states against those who seek refuge in the bankruptcy courts." *In re Garrison*, 5 B.R. 256, 260 (Bankr.E.D.Mich.1980). The court in *In re Garrison* followed a line of authority which supports the proposition that federal statutory enactments should be construed so as not to interfere with state enforcement of support obligations. *Id.* at 261; *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 121–24 (2d Cir.1979).[6]

■ Similarly, the Fourth Circuit in *Caswell v. Lang (In re Caswell)*, 757 F.2d 608 (4th Cir.1985) observed that dependents of a Chapter 13 debtor should not be required to await confirmation before permitting them to enforce their rights pursuant to a state court order of support. "The bankruptcy code may not be used to deprive dependents, even if only temporarily, of the necessities of life." *Id.* at 610. Use of Chapter 13 to frustrate current support or impede repayment of support obligation arrearages is improper and abusive.

■ As pertains to child support arrearages, the Court declines to strictly follow *In re Caswell* which held that child support arrearages may not be included in a Chapter 13 plan. *Id.* at 611. The better view would allow inclusion of child support arrearages, but require expedient resolution of the amount of arrearages fixed by the state court, and payment in full of that amount through the plan in accordance with the state court ordered schedule of repayment, if any, in order to establish good faith pursuant to Code § 1325(a)(3). Payment terms other than those ordered by the state court could be confirmable only with the consent of the ex-spouse. *See In re Davidson*, 72 B.R. 384 (Bankr.D. Colo.1987). Where no specific payment terms on the arrearages are ordered by the state court, good faith would dictate repayment in full through the plan over the briefest term practicable. Discrimination between child support arrearage claims and other unsecured claims in terms of the period of repayment and percent of dividend may be required to affect expedient payment in full of the support and alimony claims. *See e.g. In re Storberg*, 94 B.R. 144 (Bankr.D.Minn.1988); *In re Sak*, 21 B.R. 305 (Bankr.E.D.N.Y.1982).

■ With regard to the Debtor's current monthly payment as ordered by the

---

5. The Court cannot avoid cognizance of the Debtor's virtually contemporaneous proceeding in this Court regarding his restraint of Santa Maria from pursuing enforcement of the child support obligation. Judicial notice is taken of a document filed on March 18, 1991 by Santa Maria in connection with that proceeding which purports to be a "Support Collection Unit Statement Of Account as of January 25, 1991" executed by the Supervisor of the Oneida County Support Collection Unit.

6. *In re Garrison* and *American Tel. & Tel. Co.* each cited *Wetmore v. Markoe*, 196 U.S. 68, 76, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904) which, in holding that alimony and child support were not a "debt" within the meaning of the Bankruptcy Act of July 1, 1898, observed that "bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father...."

state court, it must be included in his budget and paid outside the plan. The Chapter 13 plan is funded by a debtor's "disposable income" which is defined in Code § 1325(b)(2)(A) as that income not reasonably necessary "for the maintenance or support of the debtor *or a dependent of the debtor*" (emphasis added). Thus, the portion of the Debtor's income which is ordered by the state court for support of his dependents is not paid through the plan and should be included in his budget along with the other expenses related to his own support. Accordingly, redress for a failure to make ordered payments is sought in state court based upon its order, rather than in this Court for the debtor's failure to make payments in accordance with the plan.[7]

 In the case at bar, the Debtor has neither proposed adequate payment in his plan, included his current child support obligation in his budget nor moved affirmatively to resolve his "dispute" as to these claims.

The Court must conclude that the instant plan is unconfirmable as it has not been proposed by the Debtor in good faith.[8]

Based upon the foregoing reasons it is, hereby

ORDERED, that the Debtor's Chapter 13 plan filed October 12, 1990 is denied confirmation, and it is further,

ORDERED, that the Debtor shall, within twenty (20) days of the entry of this order, file an amended Chapter 13 plan and notice it for a confirmation hearing.

---

7. As income received by a debtor is property of the estate, any action commenced in state court based upon the support order must be preceded by a motion in this Court to lift the stay for "cause" pursuant to Code § 362(d)(1).

8. The Court additionally observes with concern an apparent sale by the Debtor of real property located at 1204 Oriskany Street, Utica during August, 1990—the same month in which he filed his instant petition. See # 14b of Debtor State-

ment of Affairs. The Debtor discloses that he "paid off many judgment creditors through sale of real property." *Id.* at # 13. He further indicates that during the year immediately preceding or since the filing of his petition he paid the sum of $25,000 to "Mark Jonis." While none of these transactions are before the Court regarding the matter herein, they raise significant questions about the propriety of the Debtor's conduct which bear further inquiry.