In the Matter of Jeffrey Brian JAMES and Connie Fincher James, Debtors.

Jeffrey Brian JAMES, Plaintiff,

v.

Pamela A. MOORE and Jerry N. Neal, Defendants.

In the Matter of Jeffrey Brian JAMES and Connie Fincher James, Debtors.

Pamela A. James MOORE, Movant,

v.

Jeffrey Brian JAMES and Connie Fincher James, Respondents.

Bankruptcy No. 91–30499.
Adv. No. 92–3033.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Jan. 29, 1993.

Jerry N. Neal, Lavonia, GA, for Pamela A. Moore and Jerry N. Neal.

Anne M. Bernstein, Gainesville, GA, for Jeffrey Brian James and Connie Fincher James.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Jeffrey Brian James, Debtor, Plaintiff, filed a "Complaint for Temporary Restraining Order and Motion for Contempt" on April 20, 1992. Pamela A. Moore and Jerry Neal, Defendants, filed their response on May 8, 1992. Mr. Neal is Ms. Moore's attorney. The Court will refer to Ms. Moore as "Defendant" and to Jerry Neal as "Mr. Neal." Defendant filed a "Motion to Terminate Stay" on August 20, 1992. A hearing on the complaint and motions was held on November 24, 1992. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Plaintiff and Defendant were married in 1982. Both Plaintiff and Defendant were employed during the marriage. Defendant worked part time while she was a student in college. She received a college degree in 1985. She is thirty years old and has taught English in high school during the past eight years. Plaintiff is thirty-one years old and completed the eleventh grade.

Defendant was given certain land by her grandmother. Title to the land was in the name of both Plaintiff and Defendant. During their marriage, Plaintiff and Defendant obtained a loan from Athens Federal Savings Bank. Plaintiff, Defendant, and Defendant's mother executed the promissory note evidencing the loan.[1] The land and

---

1. After Plaintiff and Defendant were divorced, Defendant and her mother refinanced this debt. Plaintiff did not execute the new promissory note.

a mobile home were pledged as collateral. As additional collateral, Defendant's mother pledged a certificate of deposit in the amount of $32,000. Plaintiff previously had received a personal loan in the amount of $10,000 from Athens Federal to purchase a truck. Athens Federal's security interest in the truck was released under the terms of the new loan.

Plaintiff and Defendant separated in August of 1988. Plaintiff had a problem with alcohol and drugs. Defendant filed a complaint for divorce on September 10, 1988. Plaintiff and Defendant had signed a "Compromise Agreement Settling All Issues Except Divorce" dated September 9, 1988. This document was prepared by Defendant's attorney. Plaintiff was not represented by an attorney. A "Final Judgement and Decree" granting a divorce was entered on October 18, 1988. This decree adopted the provisions of the compromise agreement. Plaintiff conveyed his interest in the land to Defendant. Defendant received custody of their minor daughter. The compromise agreement provided, in part:

2.

Defendant shall be responsible for child support at $72.50 per week, beginning instanter, and continuing until said child reaches age of majority, dies, marries, or becomes self-supporting. In addition, Defendant will pay one-half of Child's medical expenses and one-half of child's costs of education.

3.

Defendant shall be entitled to the truck, television, personal belongings, and one-half of the household items (dishes, linens, etc.).

4.

Defendant will assume $10,000.00 truck loan, presently with Athens Federal Savings Bank, tied in with present home/real estate loan with said bank, as well as the loan presently outstanding on said truct [sic] with First Bank & Trust, Carnesville, Georgia. Additionally, defendant will reimburse Plaintiff @ $250.00 truck insurance down-payment, and defendant will pay $25.00 per month on back taxes, until paid in full.

5.

Plaintiff will take title to the Modular home and real estate (Defendant will sign Quitclaim Deed to same), a VCR, her personal belongings, and one-half of the household items.

6.

Plaintiff will be responsible to pay (assume) $30,000.00 consolidated house loan with Athens Federal (Defendant to pay $10,000.00 as shown in Paragraph 4, herein), the sum of $25.00 per month on back taxes, one-half of the minor child's medical expenses, and one-half of the educational expenses of said minor daughter.

At the time of the divorce, Plaintiff's take-home pay was $800 to $900 per month. Defendant's take-home pay was $900 per month. The money that Plaintiff paid to Defendant under the divorce agreement has not been listed as alimony on their individual income tax returns.

The mobile home pledged to Athens Federal was the marital residence. Defendant and her daughter continued to live there until just before she remarried in April of 1991. Defendant has been trying to sell the mobile home.

At the time of the divorce, Plaintiff and Defendant owed Athens Federal $30,000. Monthly payments on the debt were about $450. Plaintiff agreed to assume $10,000 of this debt "because he received a truck." He knew Defendant needed help making the monthly payments. Plaintiff made his payments directly to Defendant, who, in turn, made a payment on the entire debt to Athens Federal. Plaintiff contends that the $10,000 debt he assumed was not intended to be alimony, maintenance, or support. Defendant did not seek an award for alimony in the divorce action. She was concerned about her daughter and wanted to terminate the marriage as quickly as possible.

Plaintiff told Defendant in December of 1990 that he was thinking about filing a bankruptcy petition. Defendant consulted Patrick Milford, attorney at law, in February of 1991 when Plaintiff stopped making payments. Mr. Milford had represented Defendant in the divorce action. Defendant filed a "Motion for Contempt" on April 4, 1991, in the Superior Court of Franklin County, Georgia. The motion contended that Plaintiff had failed to pay his obligations in the divorce decree.

Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code on April 11, 1991. Plaintiff scheduled, as unsecured, a debt owed to Athens Federal in the amount of $9,000. Defendant was not scheduled as a creditor. She is listed in the bankruptcy schedules as a co-signer on the debt owed to Athens Federal.

On April 26, 1991, Plaintiff filed a "Plea for Stay on Account of Bankruptcy of Defendants" in the superior court. Plaintiff asked that Defendant's motion for contempt be stayed until Plaintiff received his bankruptcy discharge.

Defendant filed a proof of claim on August 14, 1991, in Plaintiff's bankruptcy case in the amount of $9,000. The claim was signed by R. Keith Milford, attorney at law. He is the son of Patrick Milford. Defendant contends that her claim is a "priority claim" because it arises out of a divorce action. The Court entered an order on August 16, 1991, confirming Plaintiff's Chapter 13 plan. The confirmed plan provides for a one percent dividend to unsecured creditors.

Mr. Milford suggested that Defendant consult an attorney knowledgeable in bankruptcy. Defendant first consulted Mr. Neal in November of 1991. Mr. Neal practices bankruptcy law. Defendant told Mr. Neal that Plaintiff had filed a bankruptcy petition. Mr. Neal was of the opinion that the superior court had concurrent jurisdiction to determine the dischargeability of Plaintiff's obligation even though Defendant had not moved for relief from the automatic stay of the Bankruptcy Code. Mr. Neal filed, in superior court, a "Motion to Alter, Amend, or Vacate Plea for Stay on Account of Bankruptcy" on December 11, 1991. The motion contended that Plaintiff's plea for stay should be dismissed because Defendant was not scheduled as a creditor in Plaintiff's bankruptcy case and because the debt at issue was not dischargeable in bankruptcy. The superior court held a hearing on January 8, 1992, and published an order dated March 3, 1992, which provided that the debt was not dischargeable in bankruptcy. The superior court refused to issue the plea for stay requested by Plaintiff.

Defendant filed a second "Motion for Contempt" on April 9, 1992, in superior court. The motion asked that Plaintiff be held in willful contempt of court for failure to pay the $10,000 debt owed to Athens Federal. A hearing on this motion was scheduled for April 22, 1992.

Plaintiff filed a complaint in this bankruptcy court on April 20, 1992, contending that Defendant and Mr. Neal had willfully violated the automatic stay of the Bankruptcy Code by proceeding with the actions in superior court. On April 21, 1992, this Court sent a letter to The Honorable George Bryant, Judge of the Superior Court. Mr. Neal, Plaintiff's attorney, and the Chapter 13 Trustee were sent copies of the letter. The Court's letter notes that, based upon a recent decision by the Eleventh Circuit Court of Appeals,[2] the actions of Defendant and Mr. Neal may have been in violation of the automatic stay. Defendant and Mr. Neal did not pursue the contempt action after receiving a copy of the Court's letter.

Defendant filed, in this Court, a motion for relief from the automatic stay on August 20, 1992. She contends that she is having to pay a debt that Plaintiff assumed under the divorce decree. Plaintiff, Defendant, and Mr. Neal have stipulated that this Court should decide the following issues: (1) whether Plaintiff's obligation is a

---

**2.** *See Carver v. Carver,* 954 F.2d 1573 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992).

dischargeable debt, (2) whether Defendant and Mr. Neal willfully violated the automatic stay, and (3) how Defendant's claim can be dealt with in Plaintiff's Chapter 13 plan.

■ Section 1328(a)(2) of the Bankruptcy Code[3] provides:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

. . . .

(2) of the kind specified in paragraph (5) or (8) of section 523(a) or 523(a)(9) of this title; or

11 U.S.C.A. § 1328(a)(2) (West Supp.1992).

Section 523(a)(5)(B) of the Bankruptcy Code[4] provides:

(a) A discharge under section 727, 1141[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

3. 11 U.S.C.A. § 1328(a)(2) (West Supp.1992).

4. 11 U.S.C.A. § 523(a)(5)(B) (West 1979 & Supp. 1992).

11 U.S.C.A. § 523(a)(5)(B) (West 1979 & Supp.1992).

In *Harrell v. Sharp (In re Harrell),*[5] the Eleventh Circuit Court of Appeals stated:

The language used by Congress in § 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is "actually in the nature of alimony, maintenance, or support." The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.

. . . .

We conclude that Congress intended that bankruptcy courts make only a simple inquiry into whether or not the obligation at issue is in the *nature* of support. This inquiry will usually take the form of deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement. Thus, there will be no necessity for a precise investigation of the spouse's circumstances to determine the appropriate level of need or support. It will not be relevant that the circumstances of the parties may have changed, *e.g.,* the spouse's need may have been reduced at the time the Chapter VII petition is filed. Thus, limited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible.

754 F.2d at 906–07 (footnote omitted).

"[A] determination of what domestic obligations are dischargeable may not include a determination of whether the recipient spouse needed the arrearages...." *Car-*

5. 754 F.2d 902 (11th Cir.1985).

*ver v. Carver,* 954 F.2d 1573, 1579 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992).

The Court is persuaded that Plaintiff's obligation to pay $10,000 to Athens Federal is nondischargeable. Defendant had custody of their minor child. The land and mobile home were their residence. Plaintiff knew that Defendant needed help in paying the debt to Athens Federal in order for his child to have a home. The incomes of Plaintiff and Defendant were about the same at the time of their divorce. Defendant's living expenses would be greater than Plaintiff's because Defendant had custody of their child. While Defendant was being paid child support, she was to receive no alimony. The Court is persuaded that Plaintiff's obligation to pay Athens Federal was in the nature of support.

■ Plaintiff contends that Defendant and Mr. Neal willfully violated the automatic stay. Section 362(h) of the Bankruptcy Code [6] provides:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C.A. § 362(h) (West Supp.1992).

In *Carver v. Carver,* the Chapter 13 debtor failed to list his ex-wife, Ms. Carver, as a creditor. Ms. Carver filed a contempt action in state court to collect a support arrearage. Her attorney subsequently learned of the debtor's bankruptcy filing, informed the state court of the bankruptcy filing, but argued that the bankruptcy did not stay the state court proceeding. The state court found the debtor in contempt, and he was jailed for seven days. The Eleventh Circuit Court of Appeals held that Ms. Carver's collection efforts violated the automatic stay because she was seeking to recover from the debtor's future wages, which are part of the Chapter 13 bankruptcy estate. The circuit court stated:

Therefore, although the Bankruptcy Code does provide an exception from the automatic stay for the collection of alimony, maintenance, or support, that exception is very narrow—*i.e.,* collection efforts may only be made against property that is not property of the estate. Generally that will include property and earnings acquired by the debtor after filing for bankruptcy protection. However, when a debtor files under Chapter 13, the bankruptcy estate includes property and wages gained after commencement of bankruptcy proceedings. Under this statutory scheme, the exception in 11 U.S.C. § 362(b)(2) has little or no practical effect in Chapter 13 situations.

. . . .

In such a situation, the proper course of action for appellants was to file for relief from the stay under 11 U.S.C. § 362(d):

. . . .

When requested, such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court. *See In re White,* 851 F.2d 170, 173 (6th Cir.1988); *In re MacDonald,* 755 F.2d 715 (9th Cir.1985). Moreover, "it would result in great injustice to require children to await a bankruptcy court's confirmation of a debtor's Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments." *Caswell v. Lang,* 757 F.2d 608, 610 (4th Cir.1985) (holding that child support arrearages may not be included in a Chapter 13 plan). Such considerations clearly constitute "cause" for which relief from stay may be granted under § 362(d)(1).

### B. Abstention

However, finding that the proper course of action for appellants in this case would have been to request relief from the stay before proceeding with the contempt action in state court does not fully resolve the issue before this court— what remedy is appropriate for failure to

---

**6.** 11 U.S.C.A. § 362(h) (West Supp.1992).

request relief from stay before proceeding in state court to attempt collection of arrearages in alimony, maintenance, or support.

. . . .

In our opinion, bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support. In each case, the court should carefully sift through the facts, keeping in mind the purposes of the automatic stay provision as well as concerns of justice, comity, and judicial economy that support abstention in domestic relations cases. *Cf. Kirby v. Mellenger*, 830 F.2d 176, 178 (11th Cir.1987) (diversity exception). Where the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim.

In the case at bar, we find that the court should have abstained. First, the purposes underlying the automatic stay provision would not be served by such a damage award. Mr. Carver's other creditors were not harmed by the actions of appellants because under the Chapter 13 plan filed by Mr. Carver, the arrearages were to be paid in full from property of the estate.

954 F.2d at 1577–80.

Defendant and Mr. Neal attempted to collect the support arrearage in superior court after they knew that Plaintiff had filed a bankruptcy case. These collection actions violated the automatic stay. The Court is not persuaded, however, that the violations were willful. Mr. Neal believed the superior court could determine the dischargeability issue even though Defendant had not received relief from the automatic stay. Defendant and Mr. Neal did not pursue the contempt action after receiving a copy of the Court's letter concerning the *Carver v. Carver* decision.

The final issue is how the support arrearage can be dealt with under the Chapter 13 plan.

Section 1322(b) of the Bankruptcy Code [7] provides, in part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

. . . .

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

11 U.S.C.A. § 1322(b)(1) and (4) (West Supp.1992).

A debtor in a Chapter 13 case must be able to deal with the arrearages on support obligations that are nondischargeable. It would be virtually impossible to propose a successful Chapter 13 plan that does not provide for payment in full of such obligations. *In re Storberg*, 94 B.R. 144, 147–48 (Bankr.D.Minn.1988). The Court is persuaded that separate classification does not unfairly discriminate against other unsecured creditors.

The Court is persuaded that Debtor can classify the support arrearage and pay it in full. *See Mickelson v. Leser (In re Leser )*, 939 F.2d 669 (8th Cir.1991); *In re Santa Maria*, 128 B.R. 32, 37 (Bankr.N.D.N.Y. 1991); *In re Whittaker*, 113 B.R. 531 (Bankr.D.Minn.1990); *In re Herkenhoff*, 101 B.R. 585 (Bankr.E.D.Mo.1989); *In re Storberg*, 94 B.R. 144 (Bankr.D.Minn.1988); *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo. 1987).

Defendant filed a motion to terminate the automatic stay to enforce Plaintiff's obligations under the divorce decree. Defendant has waived the thirty-day automat-

7. 11 U.S.C.A. § 1322(b) (West 1979 & Supp. 1992).

ic termination provision of section 362(e) of the Bankruptcy Code.[8] If Plaintiff does not amend his Chapter 13 plan to cure the arrearage through his Chapter 13 plan, the motion for relief will be reopened and placed back on the Court's calendar upon the request of Mr. Neal.

An order in accordance with this memorandum opinion will be entered this date.

## ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the obligation of Jeffrey Brian James, Debtor, Plaintiff, to pay $10,000 to Athens Federal Savings Bank hereby is determined to be nondischargeable in bankruptcy; and it is further

ORDERED that the motion for contempt filed by Plaintiff on the 20th day of April, 1992, hereby is denied; and it is further

ORDERED that Plaintiff hereby is directed to amend his Chapter 13 plan in accordance with the Court's memorandum opinion entered on the 29th day of January, 1993; and it is further

ORDERED that the "Motion to Terminate Stay" filed by Pamela A. Moore, Defendant, on the 20th day of August, 1992, hereby is denied.

SO ORDERED.

---

8. 11 U.S.C.A. § 362(e) (West Supp.1992). This section provides, in part:

> (e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.

11 U.S.C.A. § 362(e) (West Supp.1992).