**In re Tommy J. TAYLOR and Gwendolyn T. Taylor, Debtors.**

**Bankruptcy No. BK. 91–6162–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

Feb. 25, 1992.

Joseph W. Farber, Oklahoma City, Okl., for debtor.

Letha F. Sweeney, Oklahoma City, Okl., for the chapter 13 trustee.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND–THIS CASE

On September 6, 1991, debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code.[1] Debtors' secured obligations total $53,291.92 and their unsecured obligations total $16,294.52, of which, $5,883 is a student loan, not dischargeable in Chapter 13. *See* 11 U.S.C. § 1328(a)(2) (1990). Debtors' Chapter 13 plan proposes to pay the Chapter 13 Trustee ("Trustee") monthly payments of $1,135.21 for 36 months. The plan projects a distribution of 34.56 percent to unsecured creditors. During the first 36 months of the plan, 34.56 percent of the student loan will be paid. Debtors propose to extend the plan an additional 7 months in order for the student loan to be paid in full without interest.

There were no objections to the confirmation of debtors' plan, however this court set the matter for hearing because of the plan's treatment of the student loan obligation. Since the treatment of student loans is an issue in several cases before this court, debtors' counsel proposed that in the future all student loans be treated in this manner.

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

At the hearing, debtors explained that the non-dischargeable student loan is classified differently from other unsecured claims, but that during the first 36 months all unsecured claims, including the student loan, are treated the same. Debtors also explained that they are voluntarily extending the plan in order to pay the student loan in full. Debtors also contend that unless the student loan is paid in full under the plan, the creditor would file a State court action to collect the unpaid balance of the student loan.

Under § 1322(b)(1), a Chapter 13 plan may designate, separate classes unsecured claims, but may not discriminate unfairly against any class so designated.[2] Debtors argue, relying upon *In re Girardeau*, 35 B.R. 9, 11 (Bankr.D.S.C.1983), that in determining whether a classification discriminates unfairly the following five factors should be examined by the court: (1) whether there is a reasonable basis for the classification; (2) whether the classification is necessary to the debtor's rehabilitation under Chapter 13; (3) whether the discriminatory classification is proposed in good faith; (4) whether there is a meaningful payment to the class discriminated against; and (5) the difference between what the creditors discriminated against will receive under the proposed plan, and the amount they would receive if there were no separate classification.

Debtors assert that an important factor in determining if a separate classification is permissible is whether a meaningful payment is proposed to be made to the class discriminated against. Debtors conclude that all five factors are satisfied with their proposed treatment of the student loans.

Trustee takes no position on debtors' proposal, but desires that a determination be made in order to provide guidance in the future as to the allowable treatment of student loan obligations. It is noted that in the past, the Trustee objected to confirma-

tion, and the objection was sustained by this court, where debtors proposed full payment to the student loan obligation and no payment to the remaining unsecured creditors. *In re Bell*, BK–91–4487–LN (Bankr. W.D.Okla. Nov. 27, 1991).[3]

In *Girardeau*, the debtors classified a cosigned unsecured debt separately from other unsecured debts. The plan provided for full payment of the cosigned debt and a 20 percent payment for the other unsecured debts. *Girardeau*, 35 B.R. at 10. In determining that the proposed classification discriminated unfairly, the court found that the need for maintaining the co-debtor's cooperation as an emergency source of funds in the future was not sufficient to justify the separate classification. *Id.* at 11.

The *Girardeau* court did not address the "meaningful payment" factor, but focused upon whether the debtors could perform under the plan without the classification. *Id.*

Without the voluntary extension, at the conclusion of debtors' Chapter 13 plan, the student loan indebtedness would have received the same percentage distribution as all other unsecured creditors, the balance of the student loan would remain, while the balance of the other unsecured debts would be discharged. This appears to this court to be precisely the result envisioned by Congress in 1990 when it excepted student loan obligations from the Chapter 13 discharge. *See In re Saulter*, 133 B.R. 148, 150 (Bankr.W.D.Mo.1991).

## OTHER CASES AND THEIR JUDICIAL TREATMENT

As is alluded to above, student loan obligations were generally dischargeable in Chapter 13 cases prior to 1990. Thus, there was seldom any reason for debtors to separately classify those obligations in

---

**2.** Section 1322(b)(1) provides in pertinent part:
  (b) ... the plan may—
  (1) designate a class or classes of unsecured claims, ... but may not discriminate unfairly against any class so designated.
  ....

**3.** In *Bell*, 52 months were required to pay debtors' secured debt and debtors proposed to extend their plan an additional 5 months in order to pay the student loan in full, while making no payment to other unsecured debts.

Chapter 13 plans, or to treat them differently from other unsecured creditors. In 1990, however, § 1328(a)(2) was amended to except these, and certain other obligations, from discharge in Chapter 13.[4]

The inability in most instances to discharge these obligations in Chapter 13 has given rise to a variety of plan treatments intended, generally speaking, to pay 100 percent of these obligations within the Chapter 13 plan, while paying less than 100 percent to other unsecured creditors.

In *In re Boggan*, 125 B.R. 533, 534 (Bankr.N.D.Ill.1991), the court states that in order to accord a claim special treatment there must be some showing that the discriminatory classification serves a valid interest of the debtor. The court states that such interest will always be present since due to their nondischargeability, student loan creditors will always, unless the conditions of § 523(a)(8)(A) or (B) are met, have recourse against the debtor. *Id.*

The court then moves to the "best interests of creditors test" contained in § 1325(a)(4), and states that while debtors may provide for a greater percentage payment to a student loan creditor, they may not in doing so reduce payments to other creditors below what they would receive in a Chapter 7 case. The court then accepts the trustee's representation that the test was satisfied, assumes that it was properly applied, and confirms debtor's plan. *Id.*

In *Boggan*, the debtor proposed to pay his student loans in full and to pay approximately 15 percent to his other unsecured creditors. While the Congress clearly intended by its 1990 amendment that debtors be required to pay all of their student loan obligations, this court does not believe that it also intended to provide debtors with a ready excuse for unfairly discriminating against other unsecured creditors, which is specifically prohibited by § 1322(a)(3).

In *In re Scheiber*, 129 B.R. 604, 605 (Bankr.D.Minn.1991), the debtor proposed to pay $7,500 in non-priority unsecured student loan obligations in full, as a "third priority behind taxes ..." and to pay 3.5 percent to the remaining $10,000 in non-priority unsecured claims. Debtors cited in support of the proposed treatment cases in which child support arrearage obligations were paid in full, including *In re Storberg*, 94 B.R. 144 (Bankr.D.Minn.1988). The court in *Scheiber* notes that in *Storberg*, the fact that the separately classified debt was non-dischargeable was not a major factor; that the focal point was the nature of the creditor and the nature of the debt; that the best interests of the debtor should not be determinative in deciding whether the plan unfairly discriminates against any class; and that the strong public policy of ensuring the support of children was the major focus. The court concludes that whatever public policy favors repayment of student loans is not as significant as that favoring alimony and child support payments, even though neither are now dischargeable in Chapter 13, and that the proposed plan unfairly discriminates against the class of non-priority unsecured creditors. *Scheiber*, 129 B.R. at 606.

In *In re Tucker*, 130 B.R. 71, 73 (Bankr. S.D.Iowa 1991), in which debtors proposed to pay the student loan creditors in full over the 60–month term of the proposed plan, while paying nothing to other unsecured creditors, the court states its disagreement with the *Boggan* court's determination that the fact that student loan creditors will always have recourse against the debtor provides sufficient cause for discriminating in favor of those creditors. The *Tucker* court then holds that the debtor must still show that the discrimination has a reasonable basis beyond the fact that student loan obligations are now generally nondischargeable in a Chapter 13 case. Since debtors in that case made no showing whatever in that regard, the trustee's objection to confirmation of the plan on the basis of unfair discrimination is sustained and confirmation of the plan denied. *Id.* at 74.

---

**4.** The obligations would still be dischargeable if they would be discharged in a Chapter 7 case through the operation of § 523(a)(8)(A) or (B).

In *Tucker*, the court concedes that the courts have suggested certain circumstances under which discriminatory payments might be allowed, such as payment: To a doctor currently providing critical health care; to a former spouse for child support or support alimony; for insufficient funds check when nonpayment would result in criminal prosecution; and for prior student loans when payment was necessary to maintain eligibility to obtain further loans required in order to complete education. *Id.* at 73, citing *In re Lawson*, 93 B.R. 979, 984 (Bankr.N.D.Ill.1988); *In re Furlow*, 70 B.R. 973 (Bankr.E.D.Pa. 1987) (in which discriminatory treatment was proposed even though student loan obligations were then dischargeable in Chapter 13).

The same judge who decided *Tucker* later decided *In re Foreman*, 136 B.R. 532 (Bankr.S.D.Iowa 1992). In *Foreman*, the debtor proposed to pay his unsecured student loan obligations concurrently with his single secured debt. No payments would be made to the remaining unsecured creditors until the secured debt and the student loan obligations had been paid in full, but the plan proposed to pay the remaining creditors in full during the balance of the plan period. *Id.* at 533. The court concludes that the plan did not unfairly discriminate against the other unsecured creditors, citing the proposed payment of 100 percent to all creditors, the non-dischargeability of the student loan obligations, and the fact that § 1322(b)(4) permits a plan to provide for concurrent payments to secured and unsecured claims. *Id.* at 534.

Having held that the plan did not unfairly discriminate, the *Foreman* court proceeds to recognize the "additional burden" which the plan places on the remaining unsecured creditors, who "bear the risk that the plan will fail and they will have received proportionately less than the unsecured lenders who were paid first because they held student loan claims." *Id.* The court also notes that even if the plan succeeded and all creditors were paid 100 percent of their claims, the other unsecured creditors would receive less "present value" than the holders of the student loan

obligations, due to the delay in payment. Finally, the court warns debtors that absent a substantial change in their financial circumstances, any future decision to convert or dismiss and refile under Chapter 7 "will result in careful court scrutiny and an assessment of whether the conversion or refiling constitutes a 'substantial abuse' of the Bankruptcy Code." *Id.* at 535.

It seems to this court that the court in *Foreman*, after finding that the plan did not unfairly discriminate, spent considerable time and effort pointing out precisely why the opposite result should have been reached.

The court in *In re Saulter*, 133 B.R. 148, 149–50 (Bankr.W.D.Mo.1991), in which the debtor proposed to pay 100 percent to student loan claimants and 10 percent to all other unsecured creditors, provides the following cogent analysis:

> The basis of the discriminatory treatment in debtor's plan appears to be the fact that the student loan indebtedness is not dischargeable. Debtor seeks to exit bankruptcy free of student loan liability at the expense of other unsecured creditors. In essence, debtor's plan shifts the student loan non-dischargeability burden from herself onto her general unsecured creditors by paying them less during the course of her plan so that she might repay her full student loan indebtedness. This Court does not find such rationale to be a reasonable basis for discriminatory treatment in the Chapter 13 plan. In fact, such treatment runs contrary to the plain meaning of Section 1328(a)(2) and Section 523(a)(8) which is to hold the Chapter 13 debtor fully responsible for student loan indebtedness absent extraordinary circumstances....

The *Saulter* court then finds that the discriminatory treatment proposed by the debtor is unreasonable but that the debtor can carry out a plan without unfairly discriminating. The court states that if the contractual student loan payment obligation would continue beyond the period covered by the plan, § 1322(b)(5) permits the debtor to treat his student loan obli-

gations as long term debt, even though they are unsecured. Under that provision debtor may cure any arrearages within a reasonable time and maintain regular payments while the case is pending. The court notes that even though dealing with student loans under § 1322(b)(5) would require treating them differently than other unsecured debt, "it cannot be said that it would unfairly discriminate because the treatment would be in full accordance with code provisions." *Id.* at 150.

### BACK TO THIS CASE—THE NEED FOR A "BRIGHT LINE"

■ As may be seen from the foregoing recitation of the various attempts by debtors to prefer student loan creditors over other unsecured creditors, the situation before this court at this time puts a somewhat different spin on the issue. Here, *all* unsecured claims, student loans included, would be treated exactly alike for the first 36 months, and all would receive the same percentage distribution during that period. After 36 months, the plan would be extended for an additional period during which payments would be made only with regard to the student loan obligations, for so long as is necessary to pay those obligations in full. No payments would be made on account of other unsecured claims during the extended period, and any unpaid balance of those claims would be discharged upon completion of the plan.

Debtors contend that the plan could have been proposed to cover a period of only 36 months, and that the plan would have been confirmable under § 1325. When the court inquired of counsel for debtors as to why the plan was not proposed in that manner, with the balance of the student loan obli-

gation being paid by debtors after the termination of the plan, counsel answered that debtors needed the protections of the Bankruptcy Code, particularly the automatic stay of § 362(a), in order to prevent the student loan creditors from instituting collection actions against them when the Chapter 13 case was concluded.

Counsel later conceded to the court that a more important reason for the extension of the plan and the payment in full of the student loan obligations under the plan is counsel's belief that the obligations may be paid under the plan *without interest*. The plan in this case, as well as others pending before this court involving student loan obligations, specifically provide for payment of the student loan obligations without interest. Counsel is of the view that student loan creditors, whether or not they formally object to confirmation, are bound by the specific terms of a confirmed plan. *See* § 1327(a) and (c).[5]

To this court, the conclusion is inescapable that the proposal before it in this case is just as discriminatory as are all of the other proposals described above. The difference is only in the timing—here the discrimination does not surface until after 36 months, whereas in the other scenarios it is apparent from the outset. The fact remains, however, that debtors will be making payments attributable to the student loan obligations after they have ceased making any payments attributable to their other unsecured debts, and they will at the conclusion of the case have paid the former in full while discharging the unpaid remainder of the latter. This is clearly discriminatory, and in this court's opinion, it is unfairly so.[6]

---

5. While the specific issue is not before it at this time, this court is constrained to express its doubts that such a limitation in a Chapter 13 plan with regard to a contractual obligation which is not dischargeable could be sustained, even in the absence of any objection by the creditor. In other words, it is possible that the creditor holding a nondischargeable claim, at the conclusion of the Chapter 13 case, or during its pendency if relief from the automatic stay was obtained, could obtain judgment for any interest to which its contract would entitle it.

6. This court expresses no opinion on the gratuitous examples recited above of fact situations which might support discriminatory payments, since no such fact situations are before it. The court, however, is in agreement with the court in *Storberg, supra,* that public policy favors providing for spousal and child support. Student loan obligations neither possess nor warrant equivalent public policy considerations. The court also agrees with the court in *Scheiber, supra,* that the focal point in these cases should be the nature of the creditor and of the debt and that the best interest of the debtor should not be

In this court's view, it is far better judicial policy to adopt a "bright line" approach to a particular problem, if that is possible, than to approach each case, however similar, on an *ad hoc* basis. The latter lends itself to varying results on virtually identical fact situations, to unpredictability, and ultimately to unnecessary litigation of cases possessing little if any real distinctive features.

■ Based upon the foregoing, it is this court's view that a "bright line" should be drawn to prohibit, in a Chapter 13 plan, any discrimination in favor of nondischargeable student loan obligations over other unsecured creditors.

A Chapter 13 plan may not provide for payments over a period greater than 36 months, unless "cause" exists for a longer period, and in no event may the payments exceed 60 months. 11 U.S.C. § 1322(c) (1978). It is this court's view that "cause" does not exist to extend payments beyond 36 months in order to pay in full a nondischargeable unsecured student loan obligation, while making no further payments to other unsecured creditors. Thus, debtors' Chapter 13 plan may not be confirmed. Debtors are granted ten (10) days from the date hereof in which to amend their plan to render it confirmable, or to convert to a proceeding under Chapter 7. Failing either of these, the case will be dismissed.

IT IS SO ORDERED.

determinative of whether unfair discrimination is present. The court also observes that it believes § 1322(b)(1) prohibits unfair discrimination, even if it appears in the guise of the treatment of long term debt under § 1322(b)(5), as was countenanced, and in fact required, in *Saulter, supra.*