**In re Alan W. RAYNARD and Karen E. Raynard, Debtors.**

**No. HM 05–90027.**

United States Bankruptcy Court, W.D. Michigan.

Nov. 4, 2005.

David E. Bulson, Esq., Sault St. Marie, MI, for Debtors.

Brett N. Rodgers, Esq., Grand Rapids, MI, Chapter 13 Trustee.

### OPINION RE: CONFIRMATION OF DEBTORS' AUGUST 25, 2005 AMENDED PLAN

JEFFREY R. HUGHES, Bankruptcy Judge.

On August 30, 2005, the adjourned hearing regarding the confirmation of Alan and Karen Raynard's Chapter 13 plan was held. The Raynards had filed an amendment to their plan on August 25, 2005 in response to my denial of a prior plan they had proposed.[1] I now deny confirmation of their plan as currently amended for the reasons stated herein.

---

1. *See*, July 15, 2005 Order (Docket Entry No. 30).

2. *See*, July 15, 2005 Opinion (Docket Entry No. 29). *In re Raynard,* 327 B.R. 623 (Bankr. W.D.Mich.2005).

3. The Raynards' prior plan proposed to pay their creditors who had claims against only one of them a base amount of $1,000.00. "Base amount" is a term of art used in this district to denote a Chapter 13 plan arrangement whereby unsecured, non-priority creditors with allowed claims share *pro rata* a fixed

## I. BACKGROUND

The procedural and factual background concerning the Raynards' previous effort to confirm a Chapter 13 plan is set forth in my July 15, 2005 opinion.[2] To summarize, the Raynards had proposed a plan whereby the creditors to whom they were jointly indebted would receive 100% on account of their claims whereas the creditors to whom only one of them was indebted would in all likelihood receive a significantly smaller dividend.[3] I denied confirmation of that plan because it unfairly discriminated between creditors with joint claims and the Raynards' other unsecured creditors. 11 U.S.C. §§ 1322(b)(1) and 1325(a)(1).[4]

I did give the Raynards the opportunity to amend their plan so that it might conform with my opinion. The Raynards responded by filing on August 25, 2005 what they styled as "Debt Plan Amendment No. 3." The amendment was as follows:

Alan and Karen Raynard, Debtors, hereby amend their debt plan as follows:

1. During the first three years of the debt plan, all non-priority, unsecured creditors will be paid prorata after secured creditors and priority unsecured creditors are paid.

2. After three years of payments, all unsecured creditors with claim [sic]

amount of funds contributed by the debtor based upon the amount of their allowed claims. While it is conceivable that the total amount of allowed, non-joint claims could turn out to be $1,000.00 or less, the possibility is very unlikely in that the Raynards' own schedules (Docket Entry No. 9) identify 17 creditors who fit this description and the scheduled debt of these creditors totals $59,658.00.

4. *In re Raynard,* 327 B.R. 623, 643 (Bankr. W.D.Mich.2005).

against just one Debtor, excepting priority unsecured creditors, will receive nothing from the debt plan.

3. After three years, if unsecured priority creditors have not been paid in full, then they will continue to receive payments prorata from the debt plan until paid in full.

4. After three years, general unsecured creditors who hold a joint claim owned by both Alan Raynard and Karen Raynard, will receive payments from the debt plan until paid in full.

The Raynards chose not to file a brief in support of their August 25, 2005 amended plan. However, the Raynards did offer argument in support of their August 25, 2005 amended plan at the August 30, 2005 adjourned hearing. I took the matter under advisement in order to consider those arguments more closely.

## II. *OPINION*

■ As I indicated at the August 30, 2005 adjourned hearing, the Raynards' August 25, 2005 amended plan does satisfy the Section 1322(b)(1)[5] requirement that a Chapter 13 plan not discriminate unfairly against a class of creditors. The Raynards' solution to the discrimination problem is to treat all of their unsecured creditors, both joint and individual, equally for the first three years of their plan but then to pay only their joint creditors thereafter until either their joint claims are paid in full or the plan has run five years.[6]

Chapter 13 debtors in this district often use such a plan device when the claims

against them include some that would not be dischargeable under Section 1328(a). For example, a debtor with student loans might propose a Chapter 13 plan which treats all of his creditors equally for the first three years of the plan but then only makes distributions on account of the student loans thereafter. The treatment is considered non-discriminatory because a Chapter 13 debtor is not required to propose a plan any longer than three years. 11 U.S.C. § 1322(d). Consequently, it follows that a Chapter 13 debtor who voluntarily extends the length of his plan for a fourth and fifth year to repay his non-dischargeable student loans is not discriminating unfairly against his other unsecured creditors. *See, e.g., In re Strickland,* 181 B.R. 598 (Bankr.N.D.Ala.1995); *In re Rudy,* 1995 WL 365370 (Bankr.S.D.Ohio 1993); but *See In re Taylor,* 137 B.R. 60 (Bankr.D.Okla.1992).

■ However, as I indicated in my July 15, 2005 opinion, the issue raised by the Raynards' efforts to protect their farm and home from joint creditor claims arises both in the context of "unfair discrimination" under Section 1322(b)(1) and in the context of "best interests" under Section 1325(a)(4).[7] While the Raynards' August 25, 2005 amended plan does satisfy the discrimination issue, it does not meet the best interests requirement. Therefore, their August 25, 2005 amended plan cannot be confirmed.

I mentioned the best interest problem confronting the Raynards in my July 15, 2005 opinion. Section 1325(a)(4) requires as a condition to confirmation that the

---

**5.** 11 U.S.C. § 1322(b)(1). The Bankruptcy Code is incorporated into the United States Code as 11 U.S.C. § 101 *et seq.* Unless indicated otherwise, all references to "Section _____" in this opinion shall be to the Bankruptcy Code.

**6.** The Raynards' August 25, 2005 amended plan does not limit the continuing payments to joint creditors to any time period. However, the Bankruptcy Code sets five years as the maximum length of a plan. 11 U.S.C. § 1322(d).

**7.** *In re Raynard,* 327 B.R. at 631 n. 12

value of the distribution to each allowed unsecured claim under the plan be at least equal to the amount that claimant would have been paid if the bankruptcy estate of the debtor had instead been liquidated in a Chapter 7 proceeding. A shorthand explanation of this confirmation requirement is that each and every unsecured creditor with an allowed claim must receive under the proposed Chapter 13 plan at least as much as it would have received had the debtor chosen a Chapter 7 liquidation instead.

The Raynards' August 25, 2005 amended plan provides that the Raynards will pay $2,280.00 per month.[8] However, according to the Raynards, only $635.00 of each monthly installment will be available for unsecured creditors because the balance will be used to pay the Raynards' secured claimants. Individual (as opposed to joint) creditors of the Raynards are to receive distributions under their August 25, 2005 amended plan for only the first 36 months. Therefore, the amount that the Raynards will contribute to their plan which will be available for distribution to these individual creditors is $22,860.00 ($635.00 × 36 months).[9] Each individual creditor with an allowed claim will share this amount pro rata with the joint creditors who also have allowed claims.

The question, then, is what would each of these individual creditors receive if the Raynards had instead chosen to seek relief under Chapter 7 of the Bankruptcy Code. The easiest way to answer this question is to calculate the non-exempt equity in the Raynards' property and then compare that amount with what would be distributed to unsecured creditors under the Chapter 13 plan. If the amount to be distributed under the Chapter 13 plan is equal to or greater than the non-exempt equity, then the best interests requirement has been met.[10]

The Raynards' Schedules A and B indicate that they own real property which they value at $370,000.00 and personal property which they value at $134,121.00. Most of their personal property consists of dairy cows, feed, and farm equipment. The Raynards' Schedule C indicates that the Raynards claim as exempt whatever equity they have in all of this property. The Raynards claim their exemptions based upon the Michigan exemptions made available by Section 522(b)(2)(A) and the "entireties" exemption permitted by Section 522(b)(2)(B).

The Chapter 13 Trustee did file a timely objection to the Raynards' claimed exemption of their real property. However, he did not object to the personal property exemptions claimed by the Raynards.

---

8. The $2,280.00 per month currently proposed by the Raynards is an increase from the $2,270.00 per month previously offered by them.

9. The Raynards have not scheduled any unsecured, priority creditors with claims entitled to priority. If they had, then the amount available to distribute to unsecured non-priority creditors would have been reduced by these priority claims. 11 U.S.C. § 726(a).

10. Assume, for example, that a debtor has ten creditors, each of whom has an unsecured, non-priority claim of $10,000.00. Assume

further that the bankruptcy estate's equity in the debtor's property, net of liquidation costs and administrative expenses, is also $10,000.00. Each of the creditors could expect to receive $1,000.00 under this Chapter 7 scenario. Therefore, each of these creditors must receive at least $1,000.00 under any Chapter 13 plan proposed by this debtor in order to meet the Section 1325(a)(4) "best interests" test. In other words, the total amount that this hypothetical debtor proposes to pay his ten creditors over the length of his Chapter 13 plan must be equal to or greater than $10,000.00.

Therefore, the focus in this case has been upon what, if any, portion of the Raynards' equity in the real property is exempt.

The Raynards value their home at $130,000.00 and their farm at $240,000.00. They also indicate in their Schedule D that the mortgage debt against their home is $112,874.00 and the mortgage debt against their farm is $129,715.00. Finally, they do not schedule any real estate taxes as owing with respect to either of their properties. Therefore, assuming selling costs of 10%, the net values to the Raynards of their home and farm are $4,126.00 and $86,285.00 respectively or $90,411.00 in total.

The Raynards contend that none of the $90,411.00 should be considered as "available" to individual creditors under the best interests test because the Raynards owned both their home and their farm as tenants by the entirety when they filed their petition for relief. This is the same argument that they made with respect to whether their previously proposed plan unfairly discriminated against individual creditors. In effect, the Raynards assert that their individual creditors would have received little, if anything, had they chosen Chapter 7 instead because all of their equity in their entireties property would have been administered for the exclusive benefit of their joint creditors. Therefore, they argue that the pro-rata distribution their individual creditors are to receive under the proposed August 25, 2005 amended plan easily meets the best interests test imposed by Section 1325(a)(4).

The Raynards' argument is grounded upon the decisions in In re Oberlies, 94 B.R. 916 (Bankr.E.D.Mich.1988), In re Monzon, 214 B.R. 38 (Bankr.S.D.Fla.1997), and In re McRae, 308 B.R. 572 (N.D.Fla. 2003). However, I rejected the reasoning of those three decisions for the reasons set forth in my July 15, 2005 opinion. I con-

cluded instead that the non-exempt portion of the equity referenced in Section 522(b)(2)(B) must be administered for the benefit of all of the Raynards' unsecured creditors, both joint and individual. Consequently, the Raynards would have to contribute a sufficient amount to their Chapter 13 plan to ensure that their unsecured individual creditors would receive at least their portion of the non-exempt equity that they would have received had the Raynards elected Chapter 7.

The question that now arises under the Raynards' August 25, 2005 amended plan is what amount must the Raynards contribute to compensate for the distribution the individual creditors would have received in a Chapter 7 liquidation. Section 522(b)(2)(B) permits a debtor who has elected the "state exemptions" to exempt from the property of the estate:

> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B).

I determined in my July 15, 2005 opinion that the calculation of the available Section 522(b)(2)(B) exemption is a function of the value of the debtor's net interest in the entireties property less the amount of the joint claims owed by the debtor. 327 B.R. at 639. In other words, the non-exempt portion of the debtor's interest in the entireties property is equal to the amount of the joint claims owed by the debtor or the value of the debtor's net interest, whichever is less. -

In the instant case, the Raynards' Schedule F has identified debts owing by both Mr. and Mrs. Raynard in the amount

of $29,443.00. However, the Raynards have since represented that the actual amount of joint claims against them is only $25,000.00. If this latter amount is used, the non-exempt portion of Mr. Raynard's undivided interest in the farm and home (*i.e.*, the portion of his undivided interest that is not "exempt from process under applicable non-bankruptcy law," 11 U.S.C. § 522(b)(2)(B)) is $25,000.00,[11] since this amount is less than $45,205.50. Similarly, the non-exempt portion of Mrs. Raynard's interest in the farm and home is also $25,000.00.[12]

Mr. and Mrs. Raynard are also entitled to the $3,500.00 homestead exemption permitted by MICH. COMP. LAWS § 600.6023(1)(h). 11 U.S.C. § 523(b)(2)(A). Applying this additional exemption reduces the non-exempt equity in each of the Raynards' undivided interests in their home and farm from $25,000.00 to $21,500.00. Consequently, if only Mr. Raynard, for example, had filed for bankruptcy relief and had he chosen Chapter 7 instead of Chapter 13, the equity in the home and farm that would be available for distribution to his unsecured, non-priority creditors, both individual and joint, would be $21,500.00. Therefore,

were Mr. Raynard to have filed this Chapter 13 proceeding alone, the $22,860.00 projected to be distributed to all unsecured, non-priority creditors under the August 25, 2005 amended plan would be sufficient to meet the best interests requirement of Section 1325.

However, the rub is that both Mr. and Mrs. Raynard are seeking relief under Chapter 13. While the Bankruptcy Code permits two spouses to commence a "joint case" under either Chapter 13 or Chapter 7 by filing a single petition, 11 U.S.C. § 302, the commencement of a joint case does not mean that a single joint bankruptcy estate is then created. To the contrary, a separate bankruptcy estate is created for each spouse and their respective interests in property transfer to the appropriate bankruptcy estate. *In re Raynard*, 327 B.R. at 644 [citing *In re Chandler*, 148 B.R. 13, 15 (Bankr.E.D.N.C.1992) and *In re Masterson*, 55 B.R. 648 (Bankr.W.D.Pa. 1985)]. It is then left to the court to determine whether the two bankruptcy estates should be jointly administered or not. Fed.R.Bankr.P. 1015(b).

Mr. and Mrs. Raynard each held an interest in their farm and home[13] and,

---

**11.** $45,205.50 is one-half of the $90,411.00 net equity I have determined Mr. and Mrs. Raynard have in their farm and home. There is the open question as to whether actuarial tables should be used to value the spouses' respective interests because of the survivorship rights that are inherent in a tenancy by the entirety. However, it is unlikely that the age differential between Mr. and Mrs. Raynard, whatever that may be, is sufficient to warrant the application of actuarial principles given that the amount of identified joint claims is at most $29,443.00.

**12.** Section 522(b)(2)(B) could be interpreted as requiring the deduction of a debtor's joint claims from each interest of entireties property the debtor owned. For example, in the Raynards' case, this interpretation would preclude the Raynards from claiming any Sec-

tion 522(b)(2)(B) exemption in their home ($4,126.00 net equity is less than $25,000.00 joint debt) and only a $61,285.00 Section 522(b)(2)(B) exemption in their farm ($86,-285.00 net equity minus $25,000.00 joint debt). However, the rule of construction set forth in Section 102(7) directs that "the singular includes the plural." Consequently, Section 522(b)(2)(B) should be construed to permit the pooling of the debtors' interests in all of his or her entireties property before a single deduction for joint claims is taken. I would further note that this interpretation is consistent with the purpose of Section 522, which is to facilitate the debtor's post-petition "fresh start."

**13.** *In re Spears*, 308 B.R. 793 (Bankr. W.D.Mich.2004), *rev'd* by 313 B.R. 212 (W.D.Mich.2004). The district court, on ap-

therefore, each of these interests transferred into their respective bankruptcy estates when they filed their joint petition. 11 U.S.C. § 541(a)(1). Section 522 then establishes which of the many interests that comprise their respective bankruptcy estates each of the Raynards may exempt from their respective estates in order to facilitate their "fresh starts." Specifically, Section 522(b)(2)(B) permits each to exempt the entireties interest held by him or her "to the extent such interest ... is exempt from process under applicable non-bankruptcy law." Given that each bankruptcy estate's entireties interest in the farm and residence is subject to the same joint claimants, it ineluctably follows that the value the entireties interest that each wishes to exempt from their estate must be reduced by the amount of these joint claims.

The Raynards for the most part do not challenge this logic. Rather, they assert that I am mistaken in my premise that the non-exempt portion of their entireties interests claimed under Section 522(b)(2)(B) should be administered for the benefit of all creditors, and not, as *Oberlies, Monzon,*

and *McRae* would have it, for the benefit of only their joint creditors. However, this is not the time to re-argue the decision I reached in my July 15, 2005 opinion.

The Raynards do offer as additional argument that Congress could never have intended this result. However, the Raynards cannot point to any legislative history to corroborate their speculation, let alone explain why the result they advocate, no matter how "fair" it may seem, should substitute for the result so clearly required by the actual language of Section 522(b)(2)(B). Simple logic dictates that if a single debtor's interest in entireties property is to be reduced by the amount of joint claims that may be made against him to arrive at his Section 522(b)(2)(B) exemption, then that same process is to be duplicated when the other spouse also files for bankruptcy and claims her own entireties interest as exempt under Section 522(b)(2)(B). If Congress had intended a different result when a joint petition was filed, it would have said so.[14]

The Raynards also pose two hypotheticals to support their contention that Con-

---

peal, rejected my conclusion that the filing of a bankruptcy petition causes a severance of the entireties estate under Michigan law. However, even if the district court is correct, the fact that no severance occurs does not mean that one spouse's interest in the entireties property does not become property of that spouse's bankruptcy estate when he files his individual petition or that both spouses' interests in the entireties property does not become property of their respective bankruptcy estates when they file their joint petition. I recognize that the medieval notion that both spouses combine to become a single marital "entity" when property is owned by the entireties suggests a different result. However, this hoary fiction was abandoned when the Michigan legislature passed the various married woman property laws in the 19th century. *Spears, Id.* at 802 Moreover, the Bankruptcy Code, which is federally enacted legislation, necessarily supercedes whatever remaining relevance the marital en-

tity concept may have. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Indeed, the legislative history regarding the enactment of Section 541 is quite clear that a debtor's interest in entireties property is to be included within the bankruptcy estate created by the Bankruptcy Code.

**14.** My conclusion that the amount of joint claims must be considered twice when a husband and wife both claim the Section 522(b)(2)(B) exemption parallels the unquestioned practice of a husband and wife doubling their exemptions claimed under either Section 522(d) or Section 522(b)(2)(1). For example, married couples filing a joint petition claim without hesitation two Section 522(d)(1) exemptions of $18,450 each with respect to their personal residence under the federal exemptions or two homestead exemptions of $3,500 each under the Michigan exemptions.

gress could not have intended their joint claims to be considered twice in calculating the Section 522(b)(2)(B) exemptions each claims. Their first hypothetical assumes a combined bankruptcy proceeding with $10,000 of joint claims but only $5,000 of individual claims. They suggest that my interpretation of Section 522(b)(2)(B) would require the joint debtors under this scenario to sacrifice $20,000 of the equity in their entireties property to pay only $15,000 of debt. However, the Raynards' forget that the joint debtors themselves would also be stakeholders in their respective bankruptcy estates. 11 U.S.C. § 726(a)(6). My interpretation of Section 522(b)(2)(B) would result in the hypothetical joint debtors each contributing $10,000 of the equity in their respective interests in their farm and home to account for what they could not exempt under Section 522(b)(2)(B) because of their joint claims.[15] However, the absolute amount the hypothetical joint debtors would have to contribute is limited to the amount of all claims filed plus interest. 11 U.S.C. § 726(a). If any excess remains in the bankruptcy estate, then that excess is returned to the debtor. 11 U.S.C. § 726(a)(6). Therefore, the Raynards' first hypothetical posed would require their joint debtors to propose a Chapter 13 plan that paid all creditors $15,000 (*i.e.*, 100%) plus interest in order to comply with the best interests test of Section 1325(a)(4).

The Raynards' second hypothetical poses the question of what would happen if one spouse filed a Chapter 13 proceeding but the other spouse had filed a Chapter 7 proceeding instead. For purposes of this hypothetical, I assume that these two debtors, like the two debtors in the first hypothetical, owe $10,000 of joint debt and $5,000 of individual debt. I also assume that the $5,000 debt is split equally between the two debtors. That is, each spouse owes $2,500 to individual creditors in addition to the $10,000 they both owe to their joint creditors. Finally, I assume that the net equity in the two spouses' home is $20,000 and that each is also entitled to the $3,500 Michigan homestead exemption.

The Chapter 7 trustee would have to sell the Chapter 7 spouse's undivided interest in the home in order to realize the $6,500 of non-exempt equity in her interest in the home. The Chapter 7 trustee's authority to sell this interest arises under Section 363(b). *See also, In re Spears*, 308 B.R. 793 (Bankr.W.D.Mich.2004). The Chapter 7 trustee might also seek authority under Section 363(h) to sell the Chapter 13 spouse's interest in the farm so as to maximize the value of the Chapter 7 spouse's interest. However, it is unlikely that the Chapter 7 trustee would actually sell these interests, for the Chapter 13 spouse in his own Chapter 13 proceeding could propose a plan which, if confirmed, would contribute not only $6,500 to his own bankruptcy estate to account for the non-exempt portion of his own interest in the farm but also another $6,500 to the Chapter 7 spouse's bankruptcy estate so as to avoid the otherwise inevitable liquidation of their home.[16]

### III. CONCLUSION

■ Confirmation of the Raynards' August 25, 2005 amended Chapter 13 plan is

---

**15.** I have not included the Raynards' additional homestead exemption of $3,500 each in order to keep the analysis simple. The effect of including these additional exemptions would be to simply reduce the amount the Raynards would have to contribute to account for their non-exempt equity in the farm and home.

**16.** Granted, questions would still linger. For example, does the Chapter 13 spouse's contribution to his spouse's Chapter 7 estate also require a corresponding transfer of the non-

denied for the reasons I have given. The Raynards are also denied any additional opportunity in this proceeding to further amend their existing plan or to file a new plan. The Raynards have had ample opportunity to confirm a plan. However, they are either unable or unwilling to propose a plan that will conform with the rulings I have made in this case.

Furthermore, the Raynards' Chapter 13 proceeding is dismissed. 11 U.S.C. § 1307(c)(5). The Raynards were placed on notice by my July 15, 2005 order concerning the August 25, 2005 confirmation hearing that dismissal of their Chapter 13 proceeding could be a consequence of that hearing if confirmation of their plan was denied and they were not given any additional time to confirm a plan.

Section 1307(c) directs that I convert the case to a Chapter 7 proceeding if conversion, as opposed to dismissal, is in the best interests of creditors and the estate. In this instance, the best interests of creditors and the estate would indeed be best served if the Raynards' case were converted since the non-exempt equity in this real property could then be administered by a Chapter 7 trustee for the benefit of their creditors. However, conversion is not an option in this instance notwithstanding Section 1307(c) because the Raynards are farmers. 11 U.S.C. § 1307(c). Therefore, dismissal of the Raynards' Chapter 13 proceeding is appropriate.

A separate order will be entered consistent with this opinion.

exempt interest to him? Or, as another example, how does the Chapter 13 spouse address the joint creditors' claims in his own Chapter 13 plan given that the Chapter 7 trustee of the other spouse's bankruptcy estate would also be making a distribution to these same joint creditors? Such questions are not imponderable. However, it is best to defer answering them until they are actually raised in a contested matter.